**Joe A. CORBIN and Marta C. Corbin, Plaintiffs-Appellants,**

v.

**COLECO INDUSTRIES, INC., Defendant-Appellee.**

No. 83–1578.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1984.

Decided Nov. 14, 1984.

Ronald R. Gilbert, Detroit, Mich., for plaintiffs-appellants.

Donald J. Graham, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

Joe and Marta Corbin brought this product liability action in Indiana state court, seeking to recover for injuries Joe Corbin received when he hit his head on the bottom after diving into an above-ground swimming pool made by defendant Coleco Industries, Inc. ("Coleco"). Coleco removed the case to federal district court, which ultimately entered summary judgment for Coleco on all counts. The Corbins appeal, assigning as error the district court's determination that they cannot recover for breach of warranty and its finding that there is no genuine issue of material fact with respect to the remaining counts. We affirm the district court's disposition of the breach of warranty counts (II and IV) and reverse its disposition of the remaining counts (I and III).

I

In the spring of 1978 Kristen Webb and Joe Corbin agreed that Corbin could have her Coleco swimming pool if he would dismantle it and remove it from her yard. Kristen Webb had herself acquired the pool from a previous owner. Corbin removed the above-ground pool, reassembled it in his own back yard, and filled it to a depth of about four feet.

On June 3, 1978, a hot day, Corbin returned home in the early evening after playing softball. He jumped up onto the lip of the pool (a six-inch wide flat rim running around the top edge), balanced

himself, and dove in. He intended to do a "belly flopper," but for some reason his waist bent in mid-air and he entered the water head first. He hit his head on the bottom and suffered a fracture dislocation at vertebras C–5 and C–6. From that moment on, he has been quadriplegic. At the time of the accident he was 27 years old and in good health.

On June 2, 1980, Corbin and his wife, Marta, filed a four-count complaint against Coleco in the Circuit Court of Johnson County, Indiana. Count I charged Coleco with negligence in manufacturing the swimming pool with a concealed hazard to the user and without a warning that the pool was unsafe for diving. Count II charged Coleco with breach of implied warranty, alleging that the pool was not fit for its intended or foreseeable uses. Count III, a strict liability theory, charged that the pool was unreasonably dangerous, throwing divers off balance because of its lack of rigidity and making them enter the water at a steeper angle than intended. Count IV charged that Coleco expressly warranted to purchasers and users that its pool was safe for diving, knowing that it was not.

Coleco removed the case to federal district court on the basis of diversity of citizenship. On March 19, 1982, Coleco moved for partial summary judgment on the warranty counts (II and IV). The Corbins objected to summary judgment on Count II but apparently abandoned Count IV. On June 30, 1982, the district court granted Coleco's motion. The court concluded that while breach of implied warranty (Count II) may sound in contract or in tort, the Corbins could not recover on either theory. If sounding in contract, the claim is barred by the absence of privity between the Corbins and Coleco. If sounding in tort, it merely duplicates the strict liability claim, Count III. The court held that Count IV failed to state a claim for which relief can be granted. The Corbins were not in privity of contract with Coleco, and Coleco made no representations or express warranties to them.

Coleco moved for summary judgment on Counts I and III on August 13, 1982. Ruling on March 1, 1983, the court held that it was obviously dangerous for a six-foot man to dive into four feet of water, and that Corbin knew it. The court held additionally that Coleco had no duty to warn of open and obvious dangers and that a product is not defectively designed when its dangerous properties are patent. The district court found that the cause of Corbin's injuries was his own error of judgment in executing a shallow dive. Finding no genuine issue of material fact, the court granted Coleco's motion. The Corbins filed a timely notice of appeal.

The Corbins challenge summary judgment on Count II on the asserted grounds that an implied warranty claim sounding in contract is available to them and that an implied warranty claim sounding in tort does not duplicate a strict liability claim. They challenge summary judgment on Counts I and III on the grounds that there are genuine issues of material fact, notably whether there were latent defects in the pool, whether the reasonable consumer knows that he risks paralysis or death in diving into an above-ground pool, and whether Corbin in fact knew of the risk.

II

The district court held that if Corbin's breach of implied warranty count (Count II) sounded in contract, it failed to state a cause of action because there was no privity of contract between Corbin and Coleco, but if the count sounded in tort, it duplicated the strict liability count (Count III). For these reasons the court granted summary judgment for Coleco on implied warranty Count II. Corbin argues strenuously that Indiana law does not require privity of contract between the plaintiff and the defendant in order for the plaintiff to recover for breach of implied warranty sounding in contract, and that under Indiana law breach of implied warranty sounding in tort is different from strict liability.

While we basically agree with the district court, we frame our analysis of Indiana

law in somewhat different terms. We think that the distinction between "breach of implied warranty sounding in contract" and "breach of implied warranty sounding in tort" is archaic in Indiana with respect to warranties arising out of the sale of goods. Above-ground swimming pools are goods within the meaning of Article 2 of the Uniform Commercial Code as enacted in Indiana ("UCC"). Ind.Code §§ 26–1–2–102, –105(1) (1982), *see. Thompson Farms v. Corno Feed Products*, 173 Ind.App. 682, 702–704, 366 N.E.2d 3, 15–16 (1977). The UCC contains provisions for actions for breach of implied warranty, and we think the Indiana legislature intended those provisions to displace any common law actions for breach of implied warranty (in connection with the sale of goods) that may have previously existed. *See* § 26–1–1–103 (implying that particular provisions of UCC displace common law principles covering same subject). Consequently, we think that any action for breach of implied warranty against the manufacturer of an above-ground swimming pool must be analyzed within the framework of the UCC as adopted in Indiana.

Under the UCC a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Ind.Code § 26–1–2–314(1) (1982). To be merchantable, goods must at least be fit for the ordinary purposes for which such goods are used. § 26–1–2–314(2)(c). In addition, there is an implied warranty that the goods shall be fit for a particular purpose of the buyer, provided that the seller has reason to know that purpose at the time of contracting and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods. § 26–1–2–315. The seller may exclude or modify both implied warranties by following the rules of § 26–1–2–316. In general, the measure of damages for breach of warranty is the difference between the value of the goods accepted and the value they would have had if they had been as warranted. § 26–1–2–714(2). But consequential damages may be recovered in a proper case for injury to person proximately resulting from any breach of warranty. §§ 26–1–2–714(3), –715(2)(b).

We construe Count II of Corbin's complaint as attempting to state a cause of action under the UCC, seeking consequential damages for breach of one or both of the implied warranties recognized in Article 2. It is clear from the undisputed facts that Corbin, who received the pool at third hand, is not in privity of contract with Coleco. The question we must resolve is whether under Indiana law the absence of privity defeats his cause of action.

Several recent Indiana cases have held that recovery for breach of implied warranty under the UCC requires that the plaintiff be in privity of contract with the defendant. *Candlelight Homes, Inc. v. Zornes*, Ind.App., 414 N.E.2d 980 (1981); *Lane v. Barringer*, Ind.App., 407 N.E.2d 1173 (1980); *Richards v. Goerg Boat & Motors Co.*, 179 Ind.App. 102, 384 N.E.2d 1084 (1979). In *Candlelight Homes* the court denied the buyer of a defective mobile home any recovery from the manufacturer for breach of implied warranty, on grounds that the buyer had bought the home from a dealer and there was no privity between the buyer and the manufacturer. 414 N.E.2d at 982. In *Lane* the plaintiff was injured when her daughter dropped a container of drain opener in a store as she was on her way to pay for it. The court held that even if there was a sale, the plaintiff could not recover from the manufacturer for breach of implied warranty, because there was no privity of contract between her daughter and the manufacturer. 407 N.E.2d at 1175. In *Richards* the court upheld the privity requirement but reversed summary judgment for the manufacturer of a defective houseboat on grounds that the manufacturer had participated in the sale sufficiently to establish the necessary privity. 384 N.E.2d at 1092. While in *Candlelight Homes* and *Richards* the plaintiffs sought to recover only for their loss of bargain, *Lane* is clearly a personal injury case. It constitutes direct authority in Indiana law that

recovery from the manufacturer for personal injury caused by defective goods on a theory of breach of implied warranty under the UCC as adopted in Indiana requires that the buyer seeking recovery be in privity of contract with the manufacturer. We think that *Lane* states the law of Indiana, and we shall follow it here, as we did in *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1010 (7th Cir.1982).

■ The fact that Corbin is not in privity of contract with Coleco does not end our analysis, however, because the UCC also gives a right of recovery for breach of implied warranty to certain third parties who are related to a person in privity. Indiana still adheres to the more restrictive original version of this provision, even though in 1966 the drafters of the Uniform Commercial Code in its general form proposed two new and more liberal alternatives, each of which has been adopted in some states. *See generally* J. White & R. Summers, *Uniform Commercial Code* § 11–3 (2d ed. 1980). A seller's implied warranty under Indiana law extends to

> any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

Ind.Code § 26–1–2–318 (1982). It is obvious that Corbin is not a third party beneficiary under this section of any implied warranty of Coleco in connection with the sale of Corbin's pool. In order to qualify, Corbin would have to have been a guest of or in the family or household of Coleco's buyer, i.e., the person who first bought the pool from Coleco. Coleco's buyer was presumably a jobber or dealer. Even if Kristen Webb (from whom Corbin obtained the pool) had bought it directly from Coleco,

Corbin would still not qualify, because he was not in the family or household of Kristen Webb or a guest in her home when he was injured. Section 26–1–2–318 does not extend the protection of implied warranties to remote purchasers such as Corbin.[1]

According to the official comment on the Uniform Commercial Code, § 2–318 is not intended to enlarge or restrict the developing case law on whether seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain. R. Anderson, *Uniform Commercial Code* § 2–318:1 (3d ed. 1983). This comment does not necessarily state the law of Indiana, but even if the courts of Indiana are empowered to expand the list of third party beneficiaries beyond those given in § 26–1–2–318, it is clear that they have not done so.[2] *See Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1377–78 (S.D.Ind. 1976). Accordingly, we hold that Corbin has no cause of action against Coleco for breach of implied warranty under the UCC.

Our holding conflicts with one of our own cases, *Filler v. Rayex Corp.*, 435 F.2d 336 (7th Cir.1970), on which Corbin relies. In *Filler* the plaintiff lost an eye when his "Baseball Sunglasses" shattered on being hit by a baseball. The sunglasses had been bought by plaintiff's coach, presumably from a dealer. Affirming a judgment for the plaintiff based on theories of implied warranty, strict liability, and negligence, we said that "[u]nder any of those theories, privity between the manufacturer and plaintiff is not required by controlling Indiana law," *id.* at 337–38, referring to a 1966 accident. Subsequent Indiana cases, *see supra* p. 414, have shed new light on Indiana's interpretation of implied warranty under the UCC, thus making it clear that privity is indeed required.

Corbin suggests that Indiana law may recognize some third cause of action, "breach of implied warranty sounding in tort," distinct from breach of implied war-

---

**1.** We assume without holding that Corbin was a purchaser.

**2.** In *Barnes v. Mac Brown & Co.*, 264 Ind. 227, 342 N.E.2d 619 (1976), the Indiana Supreme Court ruled that a builder-vendor's implied warranty of fitness for habitation extends to second or subsequent purchasers of the dwelling house when a latent defect later appears. Sales of houses, however, are not covered by the Uniform Commercial Code; *Barnes* is thus not authority for a similar result in this case.

ranty sounding in contract and strict liability in tort. As we read the development of the Indiana law of products liability, strict products liability was introduced as a new concept of warranty, sounding in tort, to which certain warranty defenses, such as lack of privity, disclaimer, etc., are inapplicable. *See Dagley v. Armstrong Rubber Co.*, 344 F.2d 245, 253 (7th Cir.1965); *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379 (S.D.Ind.1976); *Withers v. Sterling Drug Co.*, 319 F.Supp. 878, 883 (N.D.Ind.1970); *Greeno v. Clark Equipment Co.*, 237 F.Supp. 427, 431 (N.D.Ind. 1965); *Cornette v. Searjeant Metal Products Co.*, 147 Ind.App. 46, 51–52, 258 N.E.2d 652, 655–56 (1970). We are inclined to think, though we do not hold, that in the context of products liability actions "breach of implied warranty sounding in tort," when not based on the consequential damages provisions of UCC § 26–1–2–715(2)(b), is just another name for strict liability. In any event, we are certain that Corbin has not exhibited any difference in the elements of a cause of action for breach of implied warranty sounding in tort and one in strict liability, as they would apply to the facts of this case, that would entitle him to proceed on both theories. Unless there is some possibility that Corbin might recover for breach of implied warranty sounding in tort but not on a theory of strict liability, it is wasteful and confusing for him to prosecute both theories. Accordingly, we affirm the district court's grant of summary judgment for Coleco on Count II. Corbin's claim for breach of implied warranty either fails to state a cause of action (if based on the UCC) or is indistinguishable from Count III (strict liability).

### III

### A

Count I charges that Coleco negligently failed to warn prospective users of Corbin's

pool of the danger of diving into it.[3] We interpret this to mean that Coleco breached a duty to warn of the general danger of diving into four feet of water. There is conflicting testimony in the record as to whether Corbin's pool had any warning labels on it at all, but if it did, they were apparently quite small. The district court found that Coleco had no duty to warn, because there is no duty to warn of dangers that are open and obvious. The court also found that Corbin himself knew of the danger, and we understand the court to have implicitly concluded from this finding that a missing or defective warning was not a proximate cause of Corbin's injury.

1.

■ We meet at the threshold a difficulty in the interpretation of applicable Indiana law not adequately briefed by the parties. Since June 1, 1978, products liability actions have been governed by the Indiana products liability statute, which then stated:

> This chapter shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort . . . .

Ind.Code § 33–1–1.5–1 (1982). This provision is anomalous, in that the substantive provisions of the statute do not treat of negligence at all, but only of strict liability.[4] Nevertheless, we have the assurance of the Indiana Supreme Court that "the legislature intended the act to govern *all* product liability actions, whether the theory of liability is negligence or strict liability in tort." *Dague v. Piper Aircraft Corp.*, Ind., 418 N.E.2d 207, 212 (1981) (emphasis in original). The Court went on to say that "an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its products' latently

---

**3.** Corbin also alleges without elaboration that Coleco negligently designed or manufactured the pool with a concealed hazard to the user. The district court did not consider this allegation in its opinion, and we shall not consider it here. Corbin may pursue it on remand.

**4.** In 1983 the statute was modified to delete the reference to negligence in the quoted section, so that that section now reads: "Except as provided in section 5 of this chapter [Statute of Limitations], this chapter governs all actions in which the theory of liability is strict liability in tort." Ind.Code § 33–1–1.5–1 (Supp.1983).

defective nature is certainly a product liability action based on a theory of negligence ...." *Id.*

While we are thus persuaded that the Indiana legislature intended for the statute to govern products liability actions based on a theory of negligence, we are unclear what the legislature meant by "govern," when the statute contained no substantive provisions concerning negligence. One possibility is that it intended to abolish negligence as a theory of products liability and to require such theories to be restated as strict liability theories or be stricken. A second possibility is that it intended that if any provisions of the statute limit or modify the common law principles of negligence, then those provisions would augment or displace those common law principles. On this interpretation, even though the statute lacked substantive provisions for negligence, the time limitations set forth in it, for example, would govern products liability actions based on negligence as well as those based on strict liability. No third possibility occurs to us. The second possibility is facially plausible, and it gives the statute some actual effect on products liability actions based on negligence. We therefore adopt it as our interpretation of the meaning of "govern," in the absence of any affirmative evidence that the legislature intended to take the drastic step of abolishing negligence as a theory of products liability.

### 2.

■ The district court held as a matter of law, and Coleco vigorously asserts in this court, that the danger of diving into four feet of water is open and obvious. If this is true, it is a complete defense to a charge of negligent breach of a duty to warn of the danger, since it entails that there is no such duty. *Bemis Co. v. Rubush*, Ind., 427 N.E.2d 1058, 1061 (1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). We are persuaded that Corbin put on the record before the district court evidence that the danger of serious spinal cord injury from diving into shallow water is not open and obvious and that this evidence is sufficient to preclude summary judgment for Coleco on the basis of the open and obvious defense.

Corbin's expert, Gene D. Litwin, testified in his deposition as follows:

> Users of the pool are aware of a general safety principle or homily against diving into shallow water.... The problem is that people associate that warning or general admonition with a couple of different things. They associate it with that you shouldn't dive into unknown waters, especially not unknown waters that are shallow, because there may be an object lurking there which you can strike .... They also associate the general admonition against diving as [sic] to mean that in a shallow body of water, some dives may create injury, some types of dives. The other important thing that the users of the pool typically carry in their heads is a belief that there is a safe and proper particular way to dive into pools of approximate or bodies of water of that approximate depth of three and a half feet. Flat and shallow dives with arms outstretched are common knowledge and one of the most rudimentary forms of diving that people learn. People have the belief that if they dive into water in approximately the depth we are concerned with here, that if they dive in a fairly shallow dive, with their hands outstretched out in front of them, that in the event they strike the bottom, their hands will absorb or cushion the blow, that the only thing they'll do is strike their hands on the bottom.

Litwin Deposition at 108–110. The crucial point made in this testimony is that even though people are generally aware of the danger of diving into shallow water, they believe that there is a safe way to do it, namely, by executing a flat, shallow dive. If people do in fact generally hold such a belief, then it cannot be said, as a matter of law, that the risk of spinal injury from diving into shallow water is open and obvious. Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they

know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious.

### 3.

The district court also held (implicitly) that the absence of a warning was not a proximate cause of Corbin's injury, because he already knew of the danger. The rationale for this conclusion is apparently that one who already knows of a danger would not be informed or deterred by a warning, and so the absence of a warning could not be the cause of the subsequent injury. The court did not cite to the record in support of its finding that Corbin knew of the danger. We find in the record that Corbin testified in his deposition as follows:

Q. Were you aware of the depth of the pool when you dove in?

A. Yes.

Q. Did it ever cross your mind that it might be too shallow to dive?

A. I would say yes.

Q. What did you think? I mean, how did this cross your mind? What went through your mind at the time?

A. The time I did it?

Q. Well, at the time it crossed your mind that it might be too shallow.

A. Well, just I'm six foot tall and the water's four feet deep, you know. I guess an assumption that one would make, you know, you're deeper than the water is.

Corbin Deposition at 41–42. This testimony makes it clear that Corbin knew of some general danger in diving into shallow water.[5] But it is inconclusive on the crucial points: whether he knew that he risked serious spinal cord injury, possibly resulting in paraplegia or quadriplegia, and

whether he believed that it was safe to dive as long as the dive was flat and shallow.

Corbin's deposition also contains the following testimony:

Q. At one point you stated that you jumped wrong.

A. Yes.

Q. What did you mean by that?

A. Well, the intentions were to just kind of jump in and do a belly flopper, you know, just make a big splash and cool off and get back out of the pool, but for some unknown reason—nobody knows why, I don't know why—when I got in the air, I bent in the middle and went straight in the pool instead of on my stomach.

Q. So you didn't intend to jump the way you did?

A. No. It was just something that did [sic] when it shouldn't have, I guess.

Corbin Deposition at 69–70. It is clear from this testimony that Corbin intended to do a flat and shallow dive—a "belly flopper." This clear intention, together with the Litwin testimony that people generally believe that flat, shallow dives into shallow water are safe, creates a genuine issue of material fact as to whether Corbin knew that he risked spinal injury by diving into shallow water, even if he attempted a flat, shallow dive. If he did not know this, then a conspicuous warning on the side of the pool could very well have deterred him from diving. Thus summary judgment for Coleco on the basis of Corbin's knowledge of the danger was inappropriate.

Coleco cites *Colosimo v. May Department Store Co.*, 466 F.2d 1234 (3d Cir. 1972), as a parallel case. In *Colosimo* a fifteen year old boy was injured when he dove into an above-ground pool containing less than three feet of water from the top step of the A-shaped ladder used to gain access to the pool. The boy intended to do a shallow dive without touching bottom but misjudged his dive, striking his head. *Id.*

**5.** Corbin immediately went on to deny that this thought crossed his mind when he was standing on the lip of the pool. He stated that he probably thought of it while he was putting the pool

up and again after the accident. The important question in this context, however, is what he *knew* at the time of the accident, not what *passed before his mind.*

at 1236. The court reversed a judgment on a verdict for plaintiff, holding that the absence of warning signs was not a substantial factor in causing plaintiff's injuries, since he was well aware of the risk of striking the bottom of the pool. *Id.* at 1235. The court held that the boy's error of judgment in the execution of a shallow dive was the proximate cause of the accident. *Id.* at 1236.

While *Colosimo* seems superficially parallel to Corbin's case, there are relevant differences that dissuade us from following it. The court in *Colosimo* treated it as settled that a reasonable consumer would know that a dive into a small, above-ground backyard pool containing less than three feet of water was an abnormal use which carried with it a substantial risk of injury. *Id.* at 1235. Without disputing this, we are not prepared to say as a matter of law under the facts of this case that a reasonable consumer would know that a dive into a pool the size of Corbin's, filled with four feet of water, cannot be done in a way that avoids a substantial risk of injury. Additionally, the court in *Colosimo* found that the injured boy was well aware of the risk of striking the bottom of the pool, because he had had eight years of swimming experience and four Red Cross courses in various aspects of aquatics, including diving. He had received specific instructions to check the depth of the water before diving into it. *Id.* at 1235–36. Even if the court was correct as to the boy, we think there is a genuine issue whether Corbin knew of the risk of attempting a shallow dive into four feet of water, and Corbin's level of experience and training in swimming do not suffice to persuade us otherwise.[6] For these reasons, we do not regard *Colosimo* as wholly apposite.

**6.** Corbin testified in his deposition that he rated himself an average swimmer, that he learned to swim by taking swimming lessons at the city pool when he was a kid, that he did not swim often while growing up, that such swimming as he did was normally done in a below-ground pool, that he had never swum in an above-ground pool before the accident, that he had learned diving as part of his childhood swim-

**B**

We now consider Count III, Corbin's strict liability theory. As noted above, Indiana's products liability statute, Ind.Code § 33–1–1.5 (1982), governs Corbin's action. Although the statute was amended in 1983, the amendments came into effect after the entry of final judgment below; consequently, we apply it in its original, unamended form. The statute purports to codify and restate the common law of Indiana with respect to strict liability in tort. § 33–1–1.5–3. Thus cases decided under the Indiana common law of products liability, to the extent that they are consistent with the statute, retain their authority as precedents.

The basic requirement for recovery under the statute is that the injury be caused by a product sold "in a defective condition unreasonably dangerous to any user or consumer or to his property ...." § 33–1–1.5–3 (further conditions omitted). "Unreasonably dangerous" means dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Bemis Co. v. Rubush,* Ind., 427 N.E.2d 1058, 1061 (1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). Whether a product is in an unreasonably dangerous defective condition is a question of fact.

The district court found that Corbin's injuries were caused by his own error of judgment in executing a shallow dive that he knew to be dangerous, thus implicitly concluding as a matter of law that his injuries were not caused by a defect in the pool unreasonably dangerous to users. We think this was error, for there is evidence

ming lessons, that he did not use the highboard, that in entering pools he jumped in about as often as he dived in, that he had previously swum in his aunt's "strip pit" and at certain other ponds, lakes, or reservoirs, some of which had designated diving areas, and that he had sometimes dived into water that he assumed was deep enough without verifying it. Corbin Deposition at 37–40.

in the record that the pool was in a condition that made it exceptionally dangerous, well beyond what the ordinary user of swimming pools would contemplate and well beyond any danger that Corbin actually contemplated, and that this defect was the cause of Corbin's injury.

Corbin's theory is that the lip and sides of the pool are insufficiently rigid, so that a diver attempting a belly flopper from a standing position on the lip is thrown off balance and enters the water at a steeper angle than intended. The theory is supported in the record by the deposition testimony of Corbin's expert witness, Mr. Litwin:

> The lip is a sheet metal structure, and on the bottom side is supported by the vertical wall of the pool. Since the vertical wall of the pool is curved, the place where it intersects the underside of the lip varies as you move across the lip from one end of the lip to another .... The result of that is that the lip can be thought of as a teeter-totter, pivoting about the vertical wall with the pivot changing from place to place on the lip. The result of that not only is a wobble, but a wobble that changes according to where you happen to place your foot on the lip, and that will have the effect of increasing the difficulty in controlling the dive to someone that dives from the lip.

Litwin Deposition at 112. This testimony is sufficient to bar the district court from finding as a matter of law on the record before it that Corbin's pool was not in a defective condition unreasonably dangerous to the user or that such a condition did not cause Corbin's injury.

■ Coleco argues that Corbin, by disassembling and reassembling the pool, gained intimate knowledge of its construction and characteristics. Coleco also points to Corbin's own deposition testimony that he was aware that the depth of the water was four feet and that it might be too shallow for diving. While it is a defense that the user discovered the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product, § 33–

1–1.5–4(b)(1), the evidence in the record does not suffice to establish that defense here as a matter of law. Corbin might have had intimate knowledge of the construction of the pool without knowing that the lip wobbles when one stands on it or that a wobbling pool lip impairs a diver's control. His knowledge of the depth of the water and the general danger of diving into shallow water does not show that he knew the extreme danger of diving into shallow water from a wobbly platform (assuming arguendo that such extreme danger exists).

Coleco maintains that Corbin's strict liability claim is defeated by the "open and obvious" rule of *Bemis Co. v. Rubush,* Ind., 427 N.E.2d 1058 (1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The plaintiff in *Bemis* was struck in the head by a moving part on a machine while at work, receiving serious skull and brain injuries. The case was tried on a theory of strict liability in tort, with a verdict entered in plaintiff's favor against the manufacturer of the machine. The Indiana Court of Appeals affirmed, but its holding was vacated by the Indiana Supreme Court, which remanded the case with directions that judgment be entered for the defendant. The court held that "the functions of the machine were apparent, and any dangers were open and obvious to any person using it." 427 N.E.2d at 1061. The court explained that in order to impress liability on a manufacturer, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. *Id.*

Even if it were open and obvious that there is some danger in diving into shallow water (a proposition put into question in the preceding section), we cannot say on this record as a matter of law that it was open and obvious that the lip of Corbin's pool wobbled or that a wobbly pool lip increases the danger of a dive from it. Thus the open and obvious rule does not defeat Corbin's strict liability theory at the summary judgment stage. For these reasons we also find inapposite *Burton v. L.O. Smith Foundry Products Co.,* 529 F.2d 108 (7th Cir.1976), *Posey v. Clark Equipment Co.,* 409 F.2d 560 (7th Cir.), *cert.*

*denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969), and *Law v. Yukon Delta, Inc.,* Ind.App., 458 N.E.2d 677 (1984), cited to us by Coleco.

In short, we find that summary judgment for Coleco on Count III was inappropriate, because Coleco failed to establish that there was no genuine issue of material fact. In particular, we think the record shows that it is a genuine issue of material fact whether the pool contained a latent defect making it unreasonably dangerous to divers, notwithstanding the general danger of diving into shallow water.[7]

## IV

We affirm the district court's grant of summary judgment to Coleco on Counts II and IV, seeking recovery for breach of implied and express warranties. We reverse the district court's grant of summary judgment to Coleco on Count I, seeking recovery for negligent failure to warn, and on Count III, seeking recovery based on a theory of strict liability. The case is remanded to the district court for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

**7.** Corbin argued below that the pool suffered from defects in addition to the wobbly lip. While we do not find it necessary to discuss those alleged defects in deciding this appeal, Corbin is free to pursue his theories concerning them on remand.