**Wilfred ROBERTS and Lois Roberts, Plaintiffs,**

**v.**

**HOMELITE DIVISION OF TEXTRON, INC., Defendant.**

**Civ. No. 85–183.**

United States District Court, N.D. Indiana, Hammond Division.

Dec. 22, 1986.

See also 109 F.R.D. 664.

Joel C. Levy and Michael D. Sears, Singleton, Levy, Crist & Johnson, Highland, Inc., for plaintiffs.

Timothy Walsh, Edward N. Kalamaros & Associates, South Bend, Ind., for defendant.

## ORDER

MOODY, District Judge.

### I.

This matter is before the court on a Motion for Partial Summary Judgment filed on May 28, 1986, by the defendant, Homelite Division of Textron, Inc. ("Homelite"), pursuant to Fed.R.Civ.P. Rule 56. Homelite moves the court for partial summary judgment on Counts II, III, IV, V, and VI of plaintiffs' complaint. The court granted Homelite summary judgment on Count II of the complaint by an order dated August 29, 1986. The court also addressed Counts III and VI in its previous order, but will again examine the issues raised in those Counts in light of additional evidence discovered by Homelite. Homelite bases its current motion on the pleadings, plaintiffs' answers to certain interrogatories, verbal testimony, deposition testimony of the plaintiff, Wilfred C. Roberts, and on the briefs in support of its motion. Plaintiffs, Wilfred and Lois Roberts, filed a response in opposition to Homelite's motion for partial summary judgment on July 9, 1986. Homelite then filed its reply brief on July 16, 1986, and a motion to reconsider the court's previous order refusing to grant summary judgment on all counts on October 3, 1986. For the reasons discussed below, the Motion for Partial Summary Judgment is hereby DENIED on Counts IV and V and is hereby GRANTED on Count III; the motion is GRANTED in part and DENIED in part on Count VI.

### II.

This lawsuit involves a claim for damages arising out of the personal injuries suffered by the plaintiffs on July 13, 1983. The undisputed facts reveal that, at the time of the injury, Wilfred Roberts ("plaintiff") operated a small engine repair business known as "Air Cooled Engines." Plaintiff began selling Homelite chain saws in 1980 through a Homelite salesman, Bill Welsh, and plaintiff was given a Homelite Dealership at that time. The dealership relationship with Homelite developed into the sale of other products and, in 1983, plaintiff agreed to sell Jacobsen lawnmowers and made his first order prior to July 13, 1983. At the time of the accident, July 13, 1983, plaintiff was a duly authorized dealer of Jacobsen lawnmowers. Plaintiff became a duly authorized dealer of Jacobsen lawnmowers approximately three (3) weeks prior to July 13, 1983. Homelite is the manufacturer of Jacobsen lawnmowers, including the lawnmower in question, Model S21P4E.

The lawnmower in question was delivered to Air Cooled Engines on July 13, 1983, from Homelite/Jacobsen's offices in Itaska, Illinois in a cardboard box. Enclosed with the lawnmower was a bill of lading, owner's manual and an invoice from Homelite. Plaintiff, along with three other individuals, unpacked the lawnmower and assembled the unit in preparation of sale. After installing the battery and filling the unit with the required gasoline and oil, plaintiff pulled on the starter lever but the engine failed to start or even turn over. Plaintiff telephoned Homelite's Itaska office and the office informed plaintiff that the battery had sufficient charge to start the lawnmower. Plaintiff put the lawnmower on a work bench, removed the engine shroud, and checked the battery voltage with a voltmeter. The voltmeter indicated that there was sufficient voltage present.

Plaintiff then manually engaged the bail to which the starter cable was attached while Paul Kurzeja, a co-employee, had the safety bail depressed on the handle. Kur-

zeja pulled back on the starter handle, causing the lawnmower to lurch forward towards plaintiff. The lawnmower struck plaintiff and the blade cut off part of his hand.

Plaintiffs brought a seven (7)–count complaint against Homelite on February 14, 1985. Count I, sounding in tort, and Count II, alleging Homelite's breach of express warranties, were both dismissed by the court in its previous order of August 29, 1986. Count III sounds in contract for breach of an implied warranty that the lawnmower was fit for the purpose for which it was designed. This Count survived the previous motion for summary judgment as it sounded in contract and not in tort. Counts IV and V sound in tort alleging negligence on the part of Homelite. Count VI is a claim for loss of consortium brought by plaintiff's wife, Lois Roberts. Count VII alleges that Homelite acted in a wanton and willful manner, thereby justifying an award of punitive damages. Count VII also survived defendant's first motion for summary judgment. The court, in conjunction with its decision under the first motion for summary judgment, now addresses Counts III, IV, V, and VI.

### III.

■ At the outset, the court notes that summary judgment is appropriate only where the court is satisfied that the moving party has met its burden of establishing that there exists no genuine issue with respect to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir.1985); *Thornton v. Evans*, 692 F.2d 1064, 1074 (7th Cir.1982). Additionally, the court must view the evidence submitted by the movant in the light most favorable to the non-moving party. *P.H. Glatfelter Co. v. Voith, Inc.*, 784 F.2d 770, 774 (7th Cir.1986); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). However, the plain language of Fed.R.Civ.P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Keeping the appropriate standard in mind, the court considers Homelite's motion as to each count separately.

### A. Count III

■ Plaintiffs allege a breach of implied warranty of fitness in Count III of their complaint. In order to establish an implied warranty of fitness claim sounding in contract, plaintiff Wilfred Roberts must establish the requisite privity between himself and Homelite. *Corbin v. Coleco Industries, Inc.*, 748 F.2d 411, 414–15 (7th Cir. 1984); *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1010 (7th Cir.1982); *Candlelight Homes, Inc. v. Zornes*, Ind.App., 414 N.E.2d 980 (1981); *Lane v. Barringer*, Ind. App., 407 N.E.2d 1173 (1980); *Richards v. Goerg Boat & Motors Co.*, 179 Ind.App. 102, 384 N.E.2d 1084 (1979). As determined in the court's discussion of Count III in its decision of August 29, 1986, such a warranty must be rooted in the manufacturer-dealer contract between Homelite and Air Cooled Engines, Inc. Based on the existence of that contract, the court allowed Count III to survive Homelite's first motion for summary judgment.

Homelite now argues, in its second summary judgment motion, that if Count III is found to sound in contract then it should be dismissed because Homelite properly disclaimed the implied warranty of fitness for a particular purpose pursuant to the Indiana Uniform Commercial Code ("UCC"), Ind.Code § 22-1-2-316.

■ Before examining the substance of Homelite's disclaimer defense, the court wishes to address a novel and somewhat peculiar argument made by plaintiffs in response to Homelite's alleged disclaimers. Plaintiffs have attempted to overcome any disclaimer defense by arguing that plaintiff Wilfred Roberts had no *personal* contractual relationship with Homelite; instead,

plaintiffs assert that only Air Cooled Engines, Inc. was in privity with Homelite, therefore, any disclaimers made by Homelite operated only against Air Cooled Engines, Inc. and not against plaintiff Wilfred Roberts, a mere employee of Air Cooled Engines, Inc. Plaintiffs' brief states:

> In the case at bar, Wil Roberts was not a party to the contract for the purchase of the lawnmower. The contract for the purchase of the lawnmower was between Homelite Division of Textron, Inc. and Air Cooled Engines, an Indiana corporation. Since Wilfred Roberts was not a party to the contract there can be no question that the disclaimer of implied warranty is ineffective and invalid as to the Plaintiff. As nothing more than a mere employee of the corporation, no cogent argument can be made that the employee is bound by the contracts entered into between the corporation and a third party.

The court finds this argument made by plaintiffs peculiar because it is one that should be made by the defendant Homelite. If the court were to accept as true that there was in fact no privity between plaintiff Wilfred Roberts and Homelite, then plaintiffs' claim in Count III based on an implied warranty of fitness would be dismissed because of the absence of the required privity of contract. *See Corbin,* 748 F.2d at 414–15 (and cases cited therein). The only other avenue for an implied warranty claim would be one sounding in tort which does not require privity. However, as already discussed, that option was precluded by the court's earlier order granting summary judgment to Homelite on the strict liability in tort claim of Count I. *See Thiele v. Faygo Beverage, Inc.,* Ind.App., 489 N.E.2d 562, 576–88 (1986) (holding that under Indiana law dismissal of strict liability in tort claim barred a subsequent claim of an implied warranty sounding in tort).

Whether a calculated risk or a blunder on the part of plaintiffs, the court will not allow plaintiffs to have it both ways. Plaintiffs are entirely mistaken in their contention that they were not a party to the contract of sale. First, in plaintiffs' response to defendant's first motion for partial summary judgment, they explicitly argued that their claim for breach of implied warranty sounded in contract. Plaintiffs argued that a contractual relationship existed between themselves and Homelite because "a technical or complete sales transaction existed when plaintiff ordered the Jacobsen lawnmower from [Homelite] and received the lawnmower along with an invoice for the purchase price." In fact, the court relied on plaintiffs' argument in this regard when it denied partial summary judgment on Count III. The court will not tolerate plaintiffs' attempt to vascillate between legal theories in order to serve their immediate needs.

Second, the status of Air Cooled Engines, Inc. as a corporation does not change the fact that in reality plaintiffs are the sole proprietors of that establishment. Plaintiffs are the sole shareholders in the corporation. Also, plaintiffs are responsible as general managers to carry out the day-to-day activities of the business. Those activities include dealing with Homelite and receiving the goods sent by Homelite. In essence, plaintiffs are the corporation. As such, they are as much a party to the contract as the corporation itself, especially when plaintiffs argued for that conclusion in the first place. Established principles of agency law in Indiana could be used to extend the requisite privity to plaintiff Wilfred Roberts in this case. *See Gonzales v. Kil Nam Chun,* Ind.App., 465 N.E.2d 727, 730 (1984); *Stuteville v. Downing,* 181 Ind.App. 197, 391 N.E.2d 629, 631 (1979).

Third, even assuming that plaintiff Wilfred Roberts is "nothing more than an employee of Air Cooled Engines Services, [Inc.]....", no direct privity is required between plaintiffs as employees and Homelite to benefit from an implied warranty. In *Hart v. Goodyear Tire & Rubber Company,* 214 F.Supp. 817, 819 (N.D.Ind.1963), the court recognized that:

> most businesses are carried on by means of the assistance of employees and that equipment or supplies purchased by employers will in actual use be handled by the employees, who in this respect may

be said to stand in the shoes of the employer.

*Id.* at 819 (quoting *Peterson v. Lamb Rubber Co.,* 54 Cal.2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1960)). The *Hart* court concluded that the employee should be considered in privity with the manufacturer for purposes of the employee's implied warranty claim. *Id.* at 819–20. In this case, the earlier admissions of plaintiffs, combined with the realities of the corporate structure, the rule in *Hart* and the law of agency in Indiana, all weigh heavily in favor of a finding of privity of contract between plaintiffs and Homelite. Having concluded that privity does exist, the court now turns to Homelite's disclaimer defense.

■ Homelite argues that it explicitly disclaimed all warranties by including a disclaimer provision in its invoice which accompanied the lawnmower in question. Plaintiffs argue that the disclaimer was too inconspicuous to warrant a finding that Homelite waived all warranties.

Waiver of an implied warranty of fitness is governed by Ind.Code § 26–1–2–316(2). This statutory provision states in pertinent part:

> ... to exclude or modify ... any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

The requirements for effective waiver are that the disclaimer be in "writing and conspicuous." The disclaimer in this case was clearly in writing, for it was printed on the reverse side of the invoice. Therefore, the focus of the court's analysis turns to the meaning of "conspicuous."

The court finds that the disclaimer in this case was sufficiently "conspicuous" to meet the requirements of Ind. Code § 26–1–2–316(2). The term "conspicuous" is defined in Ind. Code § 26–1–1–201(10) as:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in

capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

In this case, the disclaimer was on the reverse side of the invoice. Various terms of the contract were explained and each term began with a heading printed in large block type. The heading "Limitation of Warranties" was in large type. Apart from the headings, the only other part of the terms printed in large type was the following language:

> "APART FROM SUCH WRITTEN STATEMENT OF WARRANTY, THERE ARE NO WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, WHICH EXTEND BEYOND THE DESCRIPTION OF THE PRODUCTS ON THE FACE HEREOF."

Not only was the language in large type, but the language of the disclaimer was very similar to that suggested by Ind. Code § 26–1–2–316(2). The statute suggests the language: "There are no warranties which extend beyond the description on the face hereof." Comparison of the language in the statute with the actual language of the disclaimer in the invoice in this case further substantiates the conclusion that the disclaimer was adequately conspicuous.

In response, plaintiffs argue that the invoice containing the disclaimer was received after the sale of the lawnmower and is therefore ineffective because it was not part of the bargain. It is true that a disclaimer of warranty must be made prior to or at the time of the contract of sale. *Hahn v. Ford Motor Company, Inc.,* Ind. App. 434 N.E.2d 943, 948 (1982). However, in plaintiffs' memorandum in opposition to Homelite's first motion for summary judgment, when arguing that privity of contract existed, plaintiffs stated:

> It is clear that a technical or complete sales transaction existed when the plaintiff ordered the Jacobsen lawnmower from the defendant and *received the*

*lawnmower along with an invoice* for the purchase price.

Based on plaintiffs' own admission in its memorandum, the invoice arrived with the lawnmower and was therefore a part of the contract of sale.

Therefore, because of the effective disclaimer in Homelite's invoice, its motion for partial summary judgment on plaintiffs' Count III is hereby GRANTED.

### B. Counts IV and V

■ In Count IV of plaintiffs' complaint, plaintiffs allege that Homelite negligently manufactured the lawnmower in question and that Homelite was negligent in failing to install a clutch-brake mechanism to ensure that the lawnmower blade would not automatically engage when the mower was started. Count V of plaintiff's complaint in the main alleges negligence by Homelite for its failure to warn that the mower blade became engaged when the mower engine was started.

Homelite contends that the products liability act, Ind. Code §§ 33–1–1.5–1, *et seq.*, ("Act"), in effect on the date of the accident bars plaintiffs' claim because the Act only applies to a "user or consumer." [1] Homelite argues that plaintiffs are not users or consumers under the Act and, therefore, the reasoning behind the dismissal of the strict liability claim also supports a dismissal of the negligence claims. Plaintiffs respond by attempting to broaden the scope of "user or consumer" by relying on the revised version of the Act and the revised version's definition of "user or consumer."

The court finds that both parties have misinterpreted the Act. Plaintiffs' status as "users or consumers" under the Act is not relevant to the determination of Homelite's summary judgment motion on the negligence claims in Counts IV and V. Both parties erred in assuming that all negligence actions in products liability cases are exclusively governed by the provisions of the Indiana Products Liability Act.

That the parties are confused about the exact relationship between the Act and negligence claims in general is understandable. First, the language of the applicable version of the Act itself is all encompassing. Ind. Code § 33–1–1.5–1 states:

> This chapter shall govern all products liability actions, including those in which the theory of liability is negligence or strict liability in tort …

Ind. Code Ann. § 33–1–1.5–1 (West 1983). Second, the Indiana Supreme Court had occasion to speak to the Act's coverage in negligence cases and said that "the [Indiana] legislature intended the act to govern *all* product liability actions, whether the theory of liability is negligence or strict liability in tort." *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 212 (1981) (emphasis in original). The Indiana Supreme Court went on to say that "an action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action based on a theory of negligence." *Id.*

Normally, with such clear indications from both a state's legislature and its supreme court, the application and interpretation of a state statute would be uncontroversial. However, this situation is complicated by the fact that although the statute purports to cover all negligence claims in products liability actions, the substantive provisions of the act deal only with strict liability in tort. Apart from the section quoted above, the word "negligence" does not appear anywhere else in the act.

This anomalous situation was observed by the Seventh Circuit Court of Appeals in

---

1. Homelite submitted an affidavit from John R. Molitor, the Director of the Office of Code Revision for Indiana. In that affidavit, the Director certified that the effective date of Public Law 297–1983, the revised Ind. Code § 33–1–1.5–1 was September 1, 1983. The revision states in part:

Application of chapter

    Sec. 1. Except as provided in section 5 of this chapter, this chapter governs all actions in which the theory of liability is strict liability in tort.

Because the effective date of this revision was one and one-half months after the accident in question, it is therefore inapplicable to plaintiffs' claim.

*Corbin v. Coleco Industries, Inc.,* 748 F.2d 411, 416–17 (1984). In *Corbin,* after commenting on the "anomalous" nature of the Act, the court went on to determine if the Act actually abolished negligence as a theory of products liability or, in the alternative, if it were meant merely to augment and modify negligence as a theory of recovery in such actions. In finding that the Act did not abolish the theory negligence in products liability actions, the court stated:

> While we are thus persuaded that the Indiana legislature intended for the statute to govern products liability actions based on a theory of negligence, we are unclear what the legislature meant by "govern," when the statute contained no substantive provisions concerning negligence. One possibility is that it intended to abolish negligence as a theory of products liability and to require such theories to be restated as strict liability theories or be stricken. A second possibility is that it intended that if any provisions of the statute limit or modify the common law principles of negligence, then those provisions would augment or displace those common law principles. On this interpretation, even though the statute lacked substantive provisions for negligence, the time limitations set forth in it, for example, would govern products liability actions based on negligence as well as those based on strict liability. No third possibility occurs to us. The second possibility is facially plausible, and it gives the statute some actual effect on

products liability actions based on negligence. We therefore adopt it as our interpretation of the meaning of "govern," in the absence of any affirmative evidence that the legislature intended to take the drastic step of abolishing negligence as a theory of products liability. *Id.* at 417.

Therefore, in accordance with the Seventh Circuit's interpretation of the Act, the court finds that it is possible for plaintiffs here to assert a negligence claim notwithstanding the fact they are not "users or consumers" within the meaning of the Act.[2] It appears that the only provisions of the Act that affect negligence claims are: (1) the statute of limitations, Ind. Code § 33–1–1.5–5; (2) indemnity, Ind. Code § 33–1–1.5–6; and (3) the severability clause, Ind. Code § 33–1–1.5–7. None of those issues have been raised as a possible bar to the negligence claims here.

■ Thus, Homelite would only be entitled to summary judgment if it could demonstrate that there is no dispute as to any material fact that Homelite did not breach its duty of care to plaintiffs or that such breach was not the proximate cause of plaintiffs' injuries. *See Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 574 (1986). Homelite has made no such showing, accordingly, its motion for summary judgment on Counts IV and V is DENIED.

### C. Count VI

In Count VI plaintiffs seek recovery under a theory of loss of consortium. This

---

2. This conclusion is further supported by the recent Indiana Court of Appeals decision in *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562 (1986). The facts of *Thiele* are very similar to those in the present case. Plaintiff Thiele was an employee of a distributor (a middleman) of soft drinks and was suing the soft drink manufacturer on several theories of recovery including negligence and strict liability in tort. The incident giving rise to the suit occurred in 1981, thus the *Thiele* court was dealing with the same 1978 version of the Act presently before this court.

The *Thiele* court denied the defendant manufacturer summary judgment on the negligence claim. In its discussion of the negligence claim, the court did not even address the possible applicability of the Act to the negligence action.

Instead, the court focused on the traditional elements of negligence actions. The court stated:

> Defendant does not suggest that the manufacturer of a product owes no duty of care to a "middle man" who comes into contact with the product after it has entered the stream of commerce but before it reaches the ultimate user or consumer of the product. Thus, defendant would be entitled to summary judgment on the negligence count of the complaint only if it could meet its burden of demonstrating that the material facts of this case show, without issue, that it did not breach its duty of care owed to plaintiff or that such breach was not the proximate cause of plaintiff's injury.

*Id.* at 574.

claim is brought on behalf of Lois Roberts for the injuries she suffered as a result of her husband's personal injuries. Rhetorical paragraph 12 restates the alleged breach of implied warranties. Rhetorical paragraph 11 alleges loss of consortium as a result of the negligent acts of defendant.

Because Lois Roberts' claims under Count VI are derivative of those of Wilfred Roberts, any claims brought by Wilfred Roberts that have been dismissed must also be dismissed when brought by Lois Roberts. Therefore, as the court has dismissed Count III (implied warranty), that portion of Count VI which relies on Count III is also dismissed. However, Count VI survives to the degree it properly states a derivative claim under the negligence actions of Counts IV and V.

### Conclusion

It is, therefore, ORDERED that Homelite is GRANTED summary judgment on Count III and on Count VI to the extent it relies on Count III. Homelite's motion for summary judgment on Counts IV and V is hereby DENIED.