466 F.2d 1234
 Joseph COLOSIMO and Lorraine Colosimo, parents and natural
guardians of John A. Colosimo, a minor, and Joseph
Colosimo and Lorraine Colosimo, in their own right,
v.
The MAY DEPARTMENT STORE COMPANY, a corporation, Appellant in
No. 71-1492,
v.
Mr. and Mrs. James P. HUGHES and Muskin Manufacturing Company.
Appeal of MUSKIN MANUFACTURING COMPANY, in No. 71-1493.
Nos. 71-1492, 71-1493.
 United States Court of Appeals,
Third Circuit.
 Argued April 10, 1972.
Decided July 27, 1972.
As Amended Sept. 13, 1972.
 
 Andrew L. Weil, Engler, McGregor & Reinstadtler, Pittsburgh, Pa., for May Department Store Co.
 A. Ralph Ellis, Alter, Wright & Barron, Pittsburgh, Pa., for Muskin Manufacturing Co.
 P.J. McArdle, McArdle & Mansmann, Pittsburgh, Pa., for Colosimos.
 Before HASTIE, VAN DUSEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This is an appeal by a manufacturer and a retailer of a pool from a judgment, D.C., 325 F.Supp. 609, against the retailer with liability over against the manufacturer for injuries sustained by minor plaintiff as a result of a dive into the pool.
 
 
 2
 The facts as established by the record indicate that a pool manufactured by the Muskin Manufacturing Co. was purchased from a division of the May Department Store Co. by defendants, Mr. and Mrs. Hughes, and assembled in their backyard. The pool was an above- ground circular unit of the type variously referred to as a wading, splashing or swimming pool. The pool was 12 feet in diameter, with three-foot high side walls, and was filled with water to a depth of less than three feet. Straddling the side of the pool was an "A" shaped ladder with one leg resting on the bottom of the pool and the other on the lawn. At the top of the ladder, approximately 38 inches above the ground and constituting its top step, was a small platform measuring approximately 18 by 14 inches. The liner of the pool was composed of a smooth, dark blue vinyl material which, according to testimony, became slippery when immersed in water.
 
 
 3
 On the first day that the pool was in use, minor plaintiff, John Colosimo, age 15, was granted permission to join several other neighborhood youths in the pool. John climbed the "A" -shaped ladder, stood on the top, and arms outstretched, dove headfirst into the pool. As a result of this dive, he sustained the injuries in dispute.
 
 
 4
 A diversity action was instituted by the minor plaintiff's parents, alleging that the pool was dangerously defective in violation of Sec. 402A of the Restatement of Torts 2d.[1] It was alleged that the pool was defectively designed and unreasonably dangerous for normal use by the ultimate consumer in that the platform constituting the top of the ladder was an invitation to dive and the slippery vinyl surface would cause the outstretched hands of a diver to slide apart on impact, leaving the head unprotected.
 
 
 5
 We find that as a matter of law there was no basis for the jury's affirmative answer to question 1.[2] We note that a product is not dangerously defective within the meaning of Sec. 402A "when it is safe for normal handling and consumption," Sec. 402A Restatement of Torts 2d, comment h, and that a reasonable consumer would know that a dive into a small, above-ground backyard pool containing less than three feet of water was an abnormal use which carried with it a substantial risk of injury.[3] As the trial judge pointed out in his charge, the jury was required to find not only that the "defective" condition was dangerous but also that such condition was a proximate cause of the mishap.[4] The facts in this record make clear that the availability of the platform on top of the ladder, and the absence of warning signs concerning diving, were not a substantial factor in causing plaintiff's injuries since he was well aware of the risk of striking the bottom of the pool. Although John was only 15 years of age at the time of the accident, he had eight years of experience in swimming. He had completed four Red Cross courses covering various aspects of aquatics, including diving. He admitted that he had been instructed to check the depth of water before diving into it. Moreover just before diving into the pool, he had observed an adult apparently sitting in the pool with the water coming only to his chest and his arms resting on the rim of the pool. Thus, the approximate depth of the water, actually less than three feet, was apparent to any observer and to plaintiff in particular.
 
 
 6
 In addition, John testified that he had made shallow dives without mishap "into 3 or 4 foot [sic] of water in . . . [another] pool before this." He said that on this occasion he thought that he was so propelling himself that he would "just go out, you know, pretty shallow dive without touching the bottom," but misjudged his dive with the result that he struck his head and sustained serious injury. This error of judgment in the execution of a shallow dive, rather than any lack of warning or any slippery condition of the pool, was the proximate cause of this accident.[5]
 
 
 7
 The judgment of October 26, 1970, will be reversed and the district court will be directed to enter judgment for the defendant, May Department Store Company, and the third-party defendants; each party to bear their or its own costs.
 
 
 8
 HASTIE, Circuit Judge (concurring).
 
 
 9
 I approve Judge Van Dusen's opinion and join in the decision it requires. This concurring opinion undertakes to set out an alternative basis of decision that, in my view, also is sound.
 
 
 10
 Even if there had been a jury question on the foreseeability of a danger of abnormal use of the pool by some children for diving, and sufficient evidence to permit a finding that such danger of abnormal use was a proximate cause of the accident, the plaintiff here cannot recover because, under the law of Pennsylvania, his voluntary assumption of risk is a complete defense. Bartkewick v. Billinger, 1968, 432 Pa. 351, 247 A.2d 603; see Greco v. Bucciconi Engineering Co., 3d Cir. 1969, 407 F.2d 87, 92. True, the jury, answering a special interrogatory, found that, in diving into a shallow pool to his injury, the plaintiff did not assume the risk of a known danger. But, in my judgment, the undisputed evidence required a contrary finding and a consequent denial of recovery.
 
 
 11
 Judge Van Dusen has pointed out that the plaintiff's own testimony concedes his training and experience in diving, as well as swimming, and his observation of a man sitting in the pool with the water coming only to his chest. The plaintiff also admits that in these circumstances he attempted unsuccessfully to make a shallow enough dive to avoid striking the bottom. In the light of this evidence I can find no proper way to avoid the conclusion that recovery is barred by voluntary assumption of the risk of conduct that plaintiff knew to be dangerous. No sign warning pool users against diving would have added to his awareness of risk.
 
 
 12
 Finally, appellee argues that the smooth vinyl bottom of the pool was slippery when covered with water so that his outstretched hands slid on it and did not cushion the impact of his dive as much as would have been the case had the bottom been rough. Assuming that this was a defect in the pool's construction, analogous Pennsylvania cases hold that where a plaintiff's own fault causes an accidental fall and injury, recovery is precluded, even though fault of the defendant causes the impact to be more severe and the injury greater than otherwise might have occurred. Barber v. John C. Kohler Co., 1968, 428 Pa. 219, 237 A.2d 224; Zlates v. Nasim, 1940, 340 Pa. 157, 16 A.2d 381.
 
 
 13
 For these reasons, in addition to those stated by Judge Van Dusen, I would reverse the judgment.
 
 
 14
 ALDISERT, Circuit Judge (dissenting).
 
 
 15
 Because I believe there was sufficient evidence to submit the issues of liability and assumption of risk to the jury, I dissent.
 
 
 16
 In the summer of 1965, Mr. and Mrs. Hughes purchased from Kaufmann's Department Store, a three by twelve foot circular pool. At the time of the purchase, Mrs. Hughes viewed in Kaufmann's toy department a completely assembled pool of the type she purchased, complete with filter and ladder. The ladder was constructed in the shape of a capital "A", and it straddled the pool with one leg of the "A" in the water and the other leg on the lawn. Near the top of the ladder, approximately 38 inches above the ground, rested a small, level platform, measuring approximately 18 by 14 inches.
 
 
 17
 The department store delivered the pool and the family assembled it in their backyard, following the instructions provided by the manufacturer. On the very first day the pool was in use, John Colosimo, age 15, a neighbor of the Hughes family, saw a group of friends frolic in the pool, and asked if he might join in the fun. After receiving permission from his parents and the Hughes family, John donned his swimming trunks and made ready to engage in the frivolity. As John approached the pool, he witnessed a number of his friends diving from the platform atop the ladder into the pool. John climbed the ladder, stood on the platform, and, arms outstretched, dove into the pool. As he carried through the water, John's hands touched the vinyl bottom of the pool and slid apart causing his head to strike the bottom, resulting in a broken neck and other severe and disabling permanent injuries.
 
 
 18
 John's parents filed this diversity action against Kaufmann's the retailer of the pool. Kaufmann's, in turn, initiated a third-party action for indemnity against Muskin Manufacturing Co., the manufacturer of the pool, and also against Mr. and Mrs. Hughes.
 
 
 19
 Essentially, plaintiffs proceeded upon the theory that Kaufmann's should be held responsible for all injuries suffered by John as a result of the dive because the pool was defectively designed and unreasonably dangerous to the ultimate user. Specifically, plaintiffs claimed that two characteristics of the pool constituted defective conditions under normal usage. They argued first that the platform atop the ladder was an invitation for a child to use it to dive, yet there was no warning sign on or near the platform, nor a warning in any material accompanying the pool, that diving should be prohibited. Plaintiffs contended that this failure to post or paint prominently a "No Diving" sign constituted a defect in the design of the pool, making it unreasonably dangerous to the user. Plaintiffs also claimed that the smooth condition of the pool liner, and its absence of frictional qualities, made the pool floor so slippery as to cause the hands of a diver to "fly out" and thus subject his head and neck to injuries.
 
 
 20
 At the close of the testimony, the court submitted four special interrogatories to the jury, which returned the following answers:
 
 
 21
 1. Were the injuries which were sustained by John Colosimo on July 21, 1965, caused by a defective condition of the pool unreasonably dangerous to John Colosimo at the time he dived into it?
 
 
 22
 Answer: Yes.
 
 
 23
 2. Were John Colosimo's injuries sustained as a result of his having assumed the risk of a known danger?
 
 
 24
 Answer: No.
 
 
 25
 3. Did the May Department Store purchase the pool from Muskin Manufacturing Company in the same condition in which it was sold to Mr. & Mrs. Hughes?
 
 
 26
 Answer: Yes.
 
 
 27
 4. Was there any negligence on the part of Mr. and/or Mrs. Hughes which was a proximate cause of the accident which occurred on July 21, 1965?
 
 
 28
 Answer: No.
 
 
 29
 Once the jury determined the liability issue, evidence was introduced pertaining to the damages aspect of the case. This time the jury returned with an award of $100,000 for John Colosimo and $25,000 for his parents. The district court entered judgment against Kaufmann's for $125,000. The court further ordered that judgment be entered against Muskin on Kaufmann's claim for indemnity for $125,000. After motions for a new trial and judgment n.o.v. were denied, this appeal followed.
 
 
 30
 On the basis of its review of the evidence, the majority has concluded "that as a matter of law there was no basis for the jury's affirmative answer to question 1." Indeed, the majority finds the Sec. 402 issue obviated by what it terms the youth's "abnormal use" of the pool. I disagree and would hold that it was correct to submit to the jury the question of the existence of a defective condition under Sec. 402A on the theory that the ladder constituted an invitation to participate in a dangerous dive. One piece of the manufacturer's literature disclosed a user in the act of swimming; another carried the statement, "Get Ready to Swim." Thus, it was permissible for the jury to infer that diving was associated with the normal act of swimming; that diving in this pool was dangerous; that a warning should have been posted; and that without the warning, the pool was manufactured and sold in a defective condition.
 
 
 31
 Additionally, I believe it was permissible for the jury to find that the proximate cause of the injury was the failure to construct the pool with a lining that contained frictional qualities; that the purpose of extending a diver's hands is to protect the head from stiking the bottom; that a slippery bottom made the protection of the hands ineffective; and that a slippery liner was a defective condition. Clearly there was sufficient evidence under either or both theories to submit the defective condition issue to the jury under Sec. 402A.
 
 
 32
 Further, I disagree with the majority's finding that young Colosimo's dive constituted an abnormal use of the pool, and also from the concurring opinion's determination that the youth voluntarily assumed the risk of a known danger.
 
 
 33
 Examining the latter contention first, I note that in Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968), relied upon in the concurring opinion, the court found that appellant, an experienced glass factory worker, was cognizant of the destructive mechanisms inside the glass crushing machine into which he inserted his hand, and held that he voluntarily exposed himself to a known danger. Buttressing that decision was the presence of an on-off switch, easily accessible to appellant, which "would have provided a safe and efficient means of stopping" the machine before clearing it. 247 A.2d at 606. Cf., Blim v. Newbury Industries, Inc., 443 F.2d 1126 (10th Cir. 1971). Here, John Colosimo did not voluntarily assume the risk of a known danger. Most assuredly, thoughts of danger could not have been further from the boy's mind as he watched his friends jumping from the ladder's platform into the coolness of the pool. To conclude that he saw his friends as performing daredevil stunts, risking life and limb to jump into the pool from the platform, all the time recognizing that it was dangerous or risky to do so, is to substitute fantasy for reality. He merely saw other children diving into a new pool and he gaily followed suit. Moreover, in response to the second interrogatory the jury specifically found that John Colosimo did not assume the risk of a known danger, and there is abundant evidentiary support for that finding.
 
 
 34
 Bartkewich held, and properly so, that the defective design provisions of Sec. 402A "should only apply * * * where the absence of the safety device caused an accidental injury which was of the type that could be expected from the normal use of the product." 247 A. 2d 605. Here there was absent a safety device-a warning against diving - which could have prevented this accident. Clearly it was foreseeable that this platform might be viewed as an invitation to dive, and was so viewed by others besides Colosimo. Can it be urged that all of the children who were swimming and not merely wading were making abnormal use of the pool? I think not. The lack of a proper safety device indicating the dangers of diving from the platform constituted a defect in the pool's design from which Sec. 402A liability may result. Again, the jury so found, and, in my view, there is sufficient evidence to support that finding.
 
 
 35
 In sum, I believe that there was more than ample evidence for the jury to find (1) that the cause of the accident was the defective design of the pool rendering it unreasonably dangerous to John Colosimo, (2) that John Colosimo did not voluntarily assume the risk of a known danger when he dive into the pool, and (3) that the trial court properly charged on defective design and assumption of risk.
 
 
 36
 I would affirm the judgment in favor of the plaintiff, Appeal No. 71-1492. Because of the majority's decision denying relief to the plaintiff, it is not necessary to meet the indemnity-contribution issue raised in Appeal No. 71-1493.
 
 
 
 [1]
 Section 402A was adopted as the law of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966)
 
 
 [2]
 The court submitted four interrogatories to the jury, the first two of which read as follows:
 "1. Were the injuries which were sustained by John Colosimo on July 21, 1965, caused by a defective condition of the pool unreasonably dangerous to John Colosimo at the time he dived into it?
 "2. Were John Colosimo's injuries sustained as a result of his having assumed the risk of a known danger?"
 
 
 [3]
 See Speyer v. Humble Oil & Refining Co., 403 F.2d 766, 772 n. 16 (3d Cir.), cert. denied, 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed. 41 (1968); Prosser, The Fall of the Citadel, 50 Minn. L.Rev. 791 (1966); Frumer and Friedman, Products Liability, Sec. 15,351 (1971 rev.). Cf. Mannsz v. Macwhyte Co., 155 F.2d 445 (3d Cir. 1968)
 
 
 [4]
 Comment d of Section 402A states that the rule of that Section applies "to products which, if they are defective, may be expected to and do cause" harm. See Frumer and Friedman, Products Liability, Sec. 11.02, Proximate or Legal Cause (1971 rev.), and cases cited; Restatement of Torts (2d), Chapter 16, Topic. 1
 
 
 [5]
 It is noted that the trial judge submitted to the jury two possible defective and unreasonably dangerous conditions: (1) that a user would dive into the water from the ladder in such a way that the slippery condition of the bottom of the pool presented an unreasonable hazard if the diver struck the bottom, and (2) that the ladder and pool assembly were dangerously defective due to absence of adequate warning signs or notice to the user that it was not to be used for diving purposes. In finding the pool defective, the jury might have found that the ladder and pool assembly was defective in the second respect only. Yet in submitting the matter to the jury, the judge did not explain that if the jurors found the pool dangerously defective solely because of (2) above, the record required the jurors to find that the plaintiff had assumed that risk. Under such circumstances, even if other considerations did not require an outright reversal, the record would require a new trial on the issue of assumption of risk. Cf. Elder v. Crawley Book Machinery Co., 441 F.2d 771, 773 (3d Cir. 1971)