436 So.2d 1300 (1983)
Dr. Gladys MILLINER
v.
Jesse L. TURNER, et al.
Willene TAYLOR
v.
Jesse L. TURNER, et al.
Nos. CA-0122, CA-0123.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
Rehearing Denied September 22, 1983.
*1301 Thomas W. Milliner, New Orleans, for plaintiffs-appellants.
William J. Guste, Jr., Atty. Gen., Ronald C. Davis, Asst. Atty. Gen., Janice B. Unland, Staff Atty., New Orleans, for defendant-appellee.
Before GARRISON, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
This appeal arises from a judgment against the Southern University of New Orleans (SUNO) and SUNO students Jesse L. Turner, Raymond Seraile and Michael Williams, granting plaintiffs an award of $1,000.00 each as a result of the students alleged defamation of plaintiffs' reputations through written communications published in the SUNO Observer. The trial court held that Dr. Willene Taylor, the Head of the Humanities section at SUNO, was libeled when the newspaper articles described her as a "proven fool," and Dr. Gladys Milliner was libeled when she was accused of being a "racist". The trial court held that the term "racist" had profound significance in an almost totally black university community. From the judgment of the trial court in favor of the plaintiffs, only defendant SUNO has appealed.
The history of the case is as follows: in the January/February 1977 edition of the SUNO Observer several articles allegedly libeling Drs. Taylor and Milliner appeared. These same accusations were reprinted in an editorial fashion in the March/April 1977 issue of The Observer. The authors acknowledged in their editorials that legal action might be taken if this type of reporting were to continue. Subsequently, the plaintiffs filed suit against the student writers. The students third-partied SUNO. Approximately one year later, in the March/April 1978 issue of the SUNO Observer, the same articles and editorials were reprinted word for word. Additionally, Dr. Taylor had written a letter to the paper in an attempt to vindicate herself. Excerpts of her letter were published out of context ostensibly in order to give greater credence to the student writers' allegations. The evidence at trial also showed that the writers may have intentionally re-printed the articles to coincide with the student government elections being held at that time, in which the defendant students were seriously involved.
The court held that plaintiffs' public employment in a state university did not necessarily accord plaintiffs the rank of public official or public figure in a defamation action. The court also held that the statements made by the writers were defamatory per se, thereby relieving plaintiffs of the necessity of showing actual malice. Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Judgment in favor of plaintiffs was, therefore, entered against all individual defendants. The trial court refused to award punitive damages and attorneys' fees, although they would have been permissible under Civil Code Article 2315.1. The trial court reasoned that the damage to the plaintiffs was of a limited nature and punitive damages, if awarded, might have a chilling effect on the free expression of thoughts and ideas in a university community.
*1302 The trial court held SUNO liable pursuant to the following provisions of Civil Code Article 2320:
... teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence. In the above cases, the responsibility only attaches, when the ... teachers ... might have prevented the act which caused the damage, and had not done it.
Additionally, the trial court held that SUNO had recklessly failed to provide adequate faculty guidance to the student paper as required in the Student Guide. The Guide required each student organization to have two faculty representatives as advisors for all their activities. While SUNO had appointed two faculty members to oversee the paper, this responsibility was never exercised by the designated faculty, and progress reports were never submitted to the university administration. Ultimately, the court held that SUNO had breached its duty to supervise The Observer staff and was therefore jointly and solidarily liable to plaintiffs for "damages growing out of the unlawful invasion of their right to be fairly treated by a favored forum in their professional environment." (Trial Court Reasons for Judgment, p. 14). We find this holding by the trial court to be in error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La. 1973).
The First Amendment of the United States Constitution denies government power to exercise prior restraint on expression with regard to public areas, including state college campuses, because of its message, ideas, subject matter or its contents. U.S.C. Const. Amend. 1; Baughman v. Freienmuth, 478 F.2d 1345 (4th Cir. 1973); Solid Rock Foundation v. Ohio State University, 478 F.Supp. 96 (S.D.Oh.E.D. 1979). The First Amendment pre-empts and would take precedence over operation of La.Civ.Code art. 2320 with regard to a university's right to and degree of control over its student publications. Indeed, the choice of the content of material to go into the paper is an exercise of editorial control and judgment, and regulation of this crucial process would be inconsistent with the First Amendment guarantees of free press. Mississippi Gay Alliance v. Goudelock, 536 F.2d 1073 (5th Cir.1976). The present situation is distinguishable from one in which a private newspaper, and its publisher, are involved in disseminating the news to the community or the public at large. The state may no more restrict the right of a private paper, or be held accountable for any libel it might publish, than can SUNO control or be responsible for possible libels published in its student paper. Joyner v. Whiting, 477 F.2d 456 (4th Cir.1973). The relationship between a university and its student newspaper is anomalous and cannot be compared with a publisher and its newspaper. The latter may exercise censorship to the fullest, as it deems commercially proper to do so, but the former is almost completely barred from censoring its student paper since that would be prior restraint and would impede the free flow and expression of ideas. Baughman, supra; Solid Rock, supra; Joyner, supra.
In Joyner, supra the editor of the student newspaper at a predominantly black university attacked the actions of the university's president who had withdrawn financial support from the newspaper; suppressed its circulation; excised repugnant material; suspended its editors and/or required its imprimatur on controversial articles because the views of the student editors were abhorrent to the university administration. The United States Fourth Circuit Court of Appeals squarely held that colleges and universities are not immune from the sweep of the First Amendment. Therefore colleges and universities, like the state, cannot restrict speech or suppress a publication merely because its officials dislike the content of the editorial comment. The student editors in Joyner, supra, had published an editorial advocating racial discrimination, in the face of increasing white enrollment, to keep the black university black. This article alarmed the university administration, and it took restrictive and suppressive action. As distinguished from Joyner, supra, the administration at SUNO took little or no action regarding the publication of the Observer's *1303 articles concerning plaintiffs. The action followed by SUNO was in reality the only permissible course of action they could have taken in view of our interpretation of the First Amendment. We hold, therefore, that SUNO is not liable to plaintiffs for the allegedly defamatory articles published by the student editors in the paper.
We are not faced with determining the correctness of the trial court's judgment holding the student writers liable since they did not appeal that judgment. We find that the First Amendment of the United States Constitution would bar SUNO from exercising anything but advisory control over the paper, therefore, exempting the university from any liability or responsibility. Joyner, supra. Words may be harsh by some standards, but taken in context of the university community and its own publication, and even though they come perilously close to libel in its purest sense, it is still better to err on the side of the First Amendment freedoms rather than to stifle the creativity and criticisms of a student publication meant to encourage the development of writing skills and student expression in a learning environment.
For the foregoing reasons we reverse, as clearly erroneous, the trial court's judgment finding SUNO liable under Civil Code Article 2320 and dismiss plaintiffs' suit against the university.
REVERSED.
GARRISON, J., concurs.
GARRISON, Judge, concurring.
I concur. Even college students may speak, write and publish freely.