**Larry McCORMICK, Appellant,**

v.

**CUSTOM POOLS, INC., Clayton and Lambert Manufacturing Company, Respondents.**

**No. CX–85–784.**

Court of Appeals of Minnesota.

Nov. 5, 1985.

Review Denied Dec. 30, 1985.

John W. Carey, Fairfax, for appellant.

Barry G. Vermeer, Minnetonka, for Custom Pools, Inc.

Bruce D. Elliott, Minneapolis, for Clayton and Lambert Mfg. Co.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, HUSPENI, FORSBERG, RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Larry McCormick brought this product liability action against Respondent Clayton and Lambert Manufacturing Company (C & L) and Respondent Custom Pools, Inc. (Custom Pools) to recover for the injuries he sustained when he dove into a swimming pool and struck his head on the bottom of the pool. The trial court awarded summary judgment against McCormick and in favor of C & L and Custom Pools. McCormick appeals from that summary judgment. We affirm.

## FACTS

On August 22, 1981, Larry McCormick was rendered quadriplegic when he dove into the shallow end of his friend's swimming pool and struck his head on the bottom. The injury occurred sometime after six o'clock when it was still daylight.

McCormick considered himself an experienced swimmer. He was familiar with his friend's pool. He had used it approximately ten times during the summer of 1981, both during the day and the evening, and he was in and out of the pool a number of times throughout the afternoon of August 22, 1981. In his deposition, McCormick explained his prior use of the pool as follows:

HENRY COUSINEAU [Attorney for C & L]: During the times that you used the pool before the accident * * *, did you do any diving?

MCCORMICK: Yes.

COUSINEAU: Did you dive just from the board, or did you dive from the sides of the pool?

MCCORMICK: Both.

\* \* \* \* \* \*

COUSINEAU: \* \* \* Do you have any opinion as to how many times you had actually dived from the shallow end of the pool before this accident on all occasions \* \* \* ?

\* \* \* \* \* \*

MCCORMICK: I've done it a lot. I have no idea how many times. Everybody did it, even my son had done it before. But approximately how many times, I couldn't tell you how many times.

The pool had a blue interior liner and a nylon rope which divided the deep and shallow ends of the pool. McCormick knew the depth of the water where he dived in. He was also aware that the shallow end of the pool was level up to the nylon rope which divided the deep and shallow ends.

McCormick described his actions in his deposition as follows:

COUSINEAU: Now you've indicated that you were obviously aware that this was the shallow end, and that it was your intent to dive in the shallow end; is that right?

MCCORMICK: Yes.

COUSINEAU: And did you intend to dive, make a shallow dive?

MCCORMICK: Make a—what do they call it? \* \* \*

COUSINEAU: Is it a surface dive?

MCCORMICK: Body surf dive, I guess. I don't know what the heck they call it.

COUSINEAU: That was your intent?

\* \* \* \* \* \*

MCCORMICK: To dive and go into the deep end and then come out and help [my friend] \* \* \*.

\* \* \* \* \* \*

COUSINEAU: And swim under the rope; would that be correct?

MCCORMICK: (Nodding.)

COUSINEAU: And come out the deep end?

MCCORMICK: Yep.

COUSINEAU: And this is the same type of dive that you had done on many prior occasions; is that correct?

MCCORMICK: Yes.

McCormick commenced this action against C & L and Custom Pools, alleging negligence, breach of warranty and strict liability. C & L designed and manufactured the pool components and published assembly and installation instructions. Custom Pools sold the pool to McCormick's friend and installed it at the friend's residence.

In opposition to C & L's and Custom Pools' motion for summary judgment, McCormick submitted the lengthy affidavit of Milton Costello, an engineer and an expert in swimming pool design and safety, who had examined the pool. At the conclusion of his affidavit, Costello summarized his position, in pertinent part, as follows:

A. Subject swimming pool was unsafe for any SHALLOW WATER DIVING whatsoever, and same should have been positively and effectively prohibited by the manufacturer and installer.

B. An extreme hazard exists with respect to diving into shallow water. The hazard is not obvious to the casual bather, and is more pronounced under certain conditions due to the pool construction. Most bathers have seen hundreds of dives into shallow water and believe that it is a safe activity. \* \* \*

Effective and meaningful warning signs, in order to modify the behavior of "shallow water" divers, should have been furnished and installed by the installer and pool manufacturer, to prevent shallow water dives.

C. The pool interior was not effectively delineated with respect to the shallow and the deep ends. There was a lack of adequate and effective depth markings on the deck, depth markings at the pool interior, and interior markings (such as a striped line to indicate the

shallow water from the deep water).
* * *

D. Coupled with failure to delineate depth is the use of a flat-bottom shallow end. This is uniquely different construction from what would be normal experience with swimming pools in the public and private realm. * * * *Zero slope* is a distinct hazard in terms of anticipated bather expectation, impact degree and *sliding safety* upon mild impact with the bottom.

E. The interior pool shell is ill-defined in terms of task acuity. Safe entry and use of the pool requires information as to the irregular configuration of the interior both at the deep and at the shallow ends. Contrasting colored indicators, when placed on *a white pool interior for maximum visibility* with markings—such as dots, stripes, lines, bars, seam lines, or other visual methods for the bather to identify changes in the interior of the pool shell, were not installed, or made obvious to the unsuspecting bather in avoiding injury.

F. There was a failure by CUSTOM POOLS, INC. & CLAYTON & LAMBERT MANUFACTURING CO., to transmit adequate and concise information, of sufficient clarity and emphasis to convey to owners and potential users fundamental safety use and design information *warning against* use of their inherently dangerous facility for *shallow water diving.*

* * * * * *

[P]ool manufacturers and installers have studied, and have sophisticated knowledge regarding, the dangerous propensities of diving into the shallow end of a pool. The general public is not aware of this empirical data and its conclusions. Given this low level of public knowledge the individual is not able to recognize the hazard or evaluate the risk involved in diving. The manufacturers and installers likewise have knowledge that the casual bather lacks their knowledge. * * * [T]here is a great disparity between the sophis-

ticated knowledge of the profit-oriented manufacturer and installer, and the ignorance of the pool user who has not studied the subject. * * * The knowledge of the Defendants herein requires that they mark the light colored bottom, warn against diving, and slope the bottom of the shallow end toward the deep water!

[G.] No evidence, display, or application of Safety Engineering principles was provided to demonstrate that *any of the principals undertaking this project,* or *those who profited,* at any time hired qualified safety specialists, Engineers, or other Experts capable of recognizing the risks associated with realities of use of a residential swimming pool which was not manufactured or installed with adequate depth indicators or a sloped and more forgiving shallow end. * * * CUSTOM POOLS, INC. AND CLAYTON & LAMBERT MANUFACTURING CO., had a duty to make sure in the presence of the clearly defined foreseeable hazard and risk, that use of their veritable "death trap" was not presented to an unsuspecting public.

[H.] It was economically feasible to provide an alternative design (and construction) to the unsafe product conditions noted above, the hazard of diving into the unsloped shallow end of the Clayton & Lambert/Custom pool—particularly without safe depth indicators—to correct design defects and to employ reasonable accident prevention methods to prevent injury or death from the unreasonable risk and exposure to the hazards of shallow water diving. Under the circumstances, Clayton & Lambert/Custom's failure to use available depth indicators and warnings was unquestionably and palpably unreasonable.

The trial court granted C & L's and Custom Pools' summary judgment on the basis that there is no genuine issue as to any material facts relating to causation. The trial court found that the cause of the

accident was McCormick's failure to do a safe surface dive. The trial court also granted summary judgment in favor of Custom Pools based on the limited statutory liability of nonmanufacturers under Minn.Stat. § 544.41 (1980).

## ISSUES

1. Did the trial court properly grant summary judgment against appellant and in favor of respondents on the ground that no genuine issue of material fact exists regarding the cause of appellant's injuries?

2. Did the fact that discovery was not complete render the summary judgment award premature?

## ANALYSIS

### I.

■ The function of a court reviewing a summary judgment award is to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). All doubts and factual inferences must be resolved in favor of McCormick, the nonmoving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Issues of negligence and proximate cause are seldom matters capable of determination on a summary judgment motion. 2A D. Herr & R. Haydock, Minnesota Practice § 56.22, at 73 (1985). Summary judgment is appropriate, however, where material facts are undisputed and, as a matter of law, compel only one conclusion. *Kaczor v. Murrow,* 354 N.W.2d 524, 525 (Minn.Ct.App.1984).

The summary judgment proceeding focused on McCormick's strict liability claim because his strict liability theory is "better" for purposes of recovery than his negligence and breach of warranty theories. *Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623 (Minn.1984); *id.* at 625–26 (Simonett, J., concurring); *Continental Insurance Co. v. Loctite Corp.,* 352 N.W.2d 460, 463 (Minn. Ct.App.1984), *pet. for rev. denied,* (Minn. Nov. 8, 1984).

■ In order to recover under a strict liability theory, McCormick must establish that, among other factors, the alleged defect was the proximate cause of McCormick's injuries. *Bilotta,* 346 N.W.2d at 623 n. 3 (citing *Lee v. Crookston Coca-Cola Bottling Co.,* 290 Minn. 321, 329, 188 N.W.2d 426, 432 (1971)).

The trial court determined that, even assuming the swimming pool was defective, the facts failed to show that the alleged defects caused McCormick's injuries. The trial court concluded that the cause of McCormick's injuries was his failure to execute a flat surface dive. The trial court also concluded that C & L's and Custom Pools' alleged failure to warn of any defects could not have been the direct cause of McCormick's injury since McCormick was aware of the alleged defects.

The issue before this court on review is whether the trial court properly determined that C & L's and Custom Pools' alleged failure to warn and the alleged pool defects did not as a matter of law cause McCormick's injuries. To determine the appropriateness of the trial court's conclusion, we must consider the effect of both McCormick's awareness of the risks involved in shallow diving and his awareness of the alleged defects.

### Awareness of risks

McCormick's awareness of the risks involved in shallow diving relates to C & L's and Custom Pools' alleged failure to warn of those risks. Two cases from other jurisdictions help us to determine the effect of McCormick's awareness. In *Colosimo v. May Department Store Co.,* 466 F.2d 1234 (3d Cir.1972), a fifteen-year-old experienced swimmer was injured when he dove off a pool ladder into a small above-ground pool containing less than three feet of water. The circuit court determined that neither the availability of a platform on the top of the pool ladder nor the absence of warning signs concerning diving proximately caused the plaintiff's injuries since he was aware of the risk of striking the bottom of the pool. *Id.* at 1235. The *Colosimo* court

determined that error of judgment in diving, rather than any lack of warning or defect, caused the accident. *Id.* at 1236. *See also Benjamin v. Deffet Rentals, Inc.,* 66 Ohio St.2d 86, 419 N.E.2d 883 (1981) (experienced swimmer and diver, who was aware of danger of diving into five feet of water from a platform and who had successfully executed previous dives off the platform, could not recover for injuries sustained in diving accident); *Hensley v. Muskin Corp.,* 65 Mich.App. 662, 238 N.W.2d 362 (1975) (no duty to warn plaintiff that he should not dive into pool when twenty-eight-year-old plaintiff had some swimming experience and knew the pool was only four feet deep).

The seventh circuit court reached a somewhat different result in a similar case. The court in *Corbin v. Coleco Industries, Inc.,* 748 F.2d 411 (7th Cir.1984), reversed a summary judgment in favor of a pool manufacturer on the basis of deposition testimony that people are generally aware of the danger of diving into shallow water, but they believe that there is a safe way to do it, namely, by executing a flat, shallow dive. *Id.* at 417. The *Corbin* court resolved that:

> [The swimmer's intention to do a flat and shallow dive] together with the * * * testimony that people generally believe that flat, shallow dives into shallow water are safe, creates a genuine issue of material fact as to whether Corbin knew that he risked spinal injury by diving into shallow water, even if he attempted a flat, shallow dive. If he did not know this, then a conspicuous warning on the side of the pool could very well have deterred him from diving.

*Id.* at 418.

The plaintiff in *Corbin* is distinguishable from the *Colosimo* plaintiff on the basis that Colosimo was a very experienced swimmer, whereas Corbin did not have the same level of expertise. *Corbin,* 748 F.2d at 419. Corbin was an average swimmer, he had not done a lot of swimming in his life and he had never swum in an above-ground pool before his accident. *Id.* at 419 n. 6.

The trial court in this case cited *Corbin,* recognizing that a plaintiff's knowledge of the danger of diving in shallow water may be a material fact in determining causation, but it determined as a matter of law that McCormick was aware of the dangers of shallow diving. We believe the record supports the trial court's determination that there was no genuine issue regarding McCormick's awareness of the risks. In McCormick's deposition, he states unequivocally that he was a good and accomplished swimmer and, at the time of the accident, he intended to do a "body surf dive." It appears from the record that McCormick knew he had to execute a surface dive to avoid the serious risks involved in shallow diving.

We recognize that there is some evidence in the record, namely Costello's affidavit, indicating that the swimming pool industry has a higher awareness of the risks involved in shallow diving than the general public. We are not dealing, however, with the general public. We are confronted with evidence portraying an individual who, like the *Colosimo* plaintiff, was fully aware of the risks involved.

■ We believe McCormick's awareness of the risks precludes any claim that C & L's and Custom Pools' failure to warn of the dangers of diving caused McCormick's accident. As in *Colosimo,* a warning would not have deterred McCormick from diving since a warning would have merely informed him of risks of which he was already aware.

**Awareness of defects**

In a strict product liability case, a "plaintiff must not be aware of the defect in order to recover." *Magnuson v. Rupp Manufacturing, Inc.,* 285 Minn. 32, 40, 171 N.W.2d 201, 207 (1969) (plaintiff's awareness of a protruding spark plug on snowmobile precluded his claim that a defect existed). *Cf. Gryc v. Dayton-Hudson Corp.,* 297 N.W.2d 727 (Minn.), *cert. denied sub nom.* 449 U.S. 921, 101 S.Ct. 320, 66

L.Ed.2d 149 (1980) (plaintiffs presented evidence tending to establish that the consuming public was unaware of defect in fabric).

McCormick was aware of all the pool defects of which he now complains. He knew the exact contour of the pool. He knew the depth and slope of the shallow end. The absence of depth markers, warning signs, a white liner with colored indicators or a sloped shallow end cannot be a direct cause of McCormick's injuries when he was well aware of these alleged defects. *See Magnuson,* 285 Minn. at 43, 171 N.W.2d at 208.

We note that the case of *Hughes v. Quarve & Anderson Co.,* 338 N.W.2d 422 (Minn.1983), is distinguishable from McCormick's claim. In *Hughes,* the supreme court upheld a jury verdict finding Quarve & Anderson Company (Q & A) liable for the injuries suffered by a sixteen-year-old boy who dove into a shallow quarry pond owned by Q & A, struck his head on the irregular sand bottom and was left a quadriplegic. The jury attributed forty percent of the fault to the boy's contributory negligence. In *Hughes,* there was evidence that the water in the pond was murky on the day of the accident. *Id.* at 423. There was also evidence that Q & A had recently deposited sand on the shoreline which, according to expert testimony, spread into the water and caused changed configurations on the pond floor. *Id.* at 423, 426. The injured boy had swam at the pond two or three times in the past. On the day of the accident, he "did a running headfirst dive, *expecting a drop-off but encountering sand instead."* *Id.* at 423–24 (emphasis added).

The supreme court in *Hughes* found that the trial court properly instructed the jury on Q & A's duty as set forth in the Restatement (Second) of Torts § 339 (1965), dealing with artificial conditions dangerous to trespassing children. The supreme court further determined, among other things, that there was evidence from which the jury could find that the boy "had no appreciation of the danger involved when he dived into the pond." *Id.* at 426.

Unlike *Hughes,* the case before us is one where the injured diver was aware of the contours of the body of water into which he dove. He did not dive into the shallow end of the pool expecting anything other than shallow water. Further, in contrast to the evidence in *Hughes,* there is undisputed evidence here that McCormick knew the dangers involved in shallow diving.

■ Unquestionably, the injuries sustained by McCormick were substantial and tragic. We agree with the trial court, however, that there is no genuine issue of material fact as to the proximate cause of those injuries.

## II.

McCormick also argues that summary judgment was premature because discovery was not complete. We cannot agree.

■ For purposes of the summary judgment motion, the trial court assumed the pool had the defects alleged by McCormick. The additional discovery sought by McCormick essentially addressed the pool's alleged defects. Thus, additional discovery would not have aided the trial court in determining whether any issues of material fact regarding causation existed. Nor would that discovery have changed the result of the summary judgment motion.

Since we affirm the trial court's summary judgment on the issue of causation, we need not reach the issue raised by McCormick regarding the trial court's application of Minn.Stat. § 544.41 (1980) to Custom Pools.

## DECISION

The trial court properly granted summary judgment against McCormick and in favor of C & L and Custom Pools when no genuine issue of material fact exists regarding the cause of McCormick's injuries. The fact that discovery was not complete did not render the summary judgment award premature.

Affirmed.

CRIPPEN, Judge (dissenting).

I respectfully dissent.

As stated in the majority opinion, appellant McCormick supported his complaint with an affidavit from an engineer who is an expert on design and safety of swimming pools. The expert's statements raise a genuine issue of material fact regarding the cause of appellant's injuries.

First, the affidavit details design techniques available to reduce hazards of devastating injuries and states that it was economically feasible for C & L and Custom Pools to employ some of these accident prevention methods in the design of the pool.

Second, and more importantly, the expert's affidavit contrasts the need for potent warnings about shallow diving with the approach of these suppliers and others who insistently promote diving activity as part of the use of "colorful" backyard pools. The engineer's affidavit states:

> Their failure to prevent any shallow water diving whatsoever was unscrupulous. Design and engineering of this swimming pool does not allow for any safe shallow water diving.
>
> \* \* \* \* \* \*
>
> Most bathers have seen hundreds of dives into shallow water and believe that it is safe activity.
>
> \* \* \* \* \* \*
>
> [P]ool manufacturers and installers have studies, and have sophisticated knowledge regarding the dangerous propensities of diving into the shallow end of a pool. The general public is not aware of this empirical data and its conclusions. \* \* \* [T]here is a great disparity between the sophisticated knowledge of the profit-oriented manufacturer and installer, and the ignorance of the pool user who has not studied the subject.

The majority concludes that McCormick was sufficiently aware of the risks involved in shallow diving and of the alleged defects such that no genuine issue existed regarding his awareness. To the contrary, the expert's evidence shows an issue here regarding the extraordinary dangers of shallow diving, and it would support a finding that the pool equipment was unreasonably dangerous for use by any swimmer who does not know of this high degree of danger and who is not emphatically discouraged from shallow diving by the manufacturer and installer of the equipment.

Evidence on the fault of respondents is similar in nature and at least as serious as the fault discussed in *Corbin v. Coleco Industries, Inc.*, 748 F.2d 411 (7th Cir. 1984). As the court in *Corbin* stated,

> the crucial point made in this [the expert's] testimony is that even though people are generally aware of the danger of diving into shallow water, they believe that there is a safe way to do it, namely, by executing a flat, shallow dive. If people do in fact generally hold such a belief, then it cannot be said, as a matter of law, that the risk of spinal injury from diving into shallow water is open and obvious.

*Corbin*, 748 F.2d at 417.

A "plaintiff must not be aware of the defect in order to recover." *Magnuson v. Rupp Manufacturing, Inc.*, 285 Minn. 32, 40, 171 N.W.2d 201, 207 (1969). When employing this rule of law, particularly extreme hazards must not be construed as being the type of less serious dangers that are understood by most users. *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 747 (Minn.), *cert. denied sub nom. Riegel Textile Corporation v. Gryc*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). In *Gryc*, the Minnesota Supreme Court distinguished the generally recognized flammability of a garment from extremely flammable characteristics. *Gryc*, 297 N.W.2d at 741. The *Corbin* decision is an important application of this logical view of the law.

The evidence that the consuming public is not aware of the extremely high risks involved in shallow diving, because they do not have before them the weighty evidence on the danger, precludes determination of the issue as a matter of law. There is a

genuine issue whether the causative impact of respondent's fault, as indicated by appellant's expert, was great enough to permit recovery of a more experienced swimmer who was nevertheless vulnerable to lack of sophisticated information, general public misperceptions, and the unwillingness of the manufacturers and suppliers to properly inform users or the public about the treacherous dangers in shallow diving.

A contrary result is not dictated by *Colosimo*, decided in 1972 over the dissent of Circuit Judge Aldisert. *Colosimo v. May Department Store Company*, 466 F.2d 1234 (3d Cir.1972). The dissenter's view on causation is convincing. Colosimo did not attempt to make a shallow dive, but dove headfirst into less than three feet of water. *Id.* at 1235–36. He had been instructed to check the depth of water before diving into it. *Id.* at 1235. Moreover, that case did not involve 1985 evidence on the dangers of shallow diving, or the accumulated evidence on the industry response to that danger.

The strict liability issue in this case is one for the jury to decide.

PARKER, Judge (dissenting).

I respectfully dissent.

If, as appellant's expert asserts, the manufacturers and installers of swimming pools are in possession of empirical data establishing that diving into the shallow end of pools is substantially more dangerous than is generally known, the sale of such instruments without appropriate warnings would justify imposition of liability upon the possessors of the special knowledge.

Paraplegia and quadraplegia are common injuries to persons laboring under the misapprehension that "flat diving" is reasonably safe in the shallow end of a backyard pool. An appropriate description to be applied to an enterprise fostering such tragedy in seeking profit was used by a federal judge of this district; it is "corporate irresponsibility at its meanest." This case should not be decided on summary judgment.

FOLEY, Judge (dissenting).

I concur in the dissents of Judge Parker and Judge Crippen.