**Richard D. LEWIS, Appellant,**

v.

**ST. CLOUD STATE UNIVERSITY, et al., Respondents.**

No. A04–1308.

Court of Appeals of Minnesota.

March 22, 2005.

---

Marshall H. Tanick, Teresa J. Ayling, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, Scott R. Goings, Nancy J. Joyer, Assistant Attorneys General, St. Paul, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Richard D. Lewis challenges summary judgment granted to respondents St. Cloud State University (SCSU) and Minnesota State College & University System (MnSCU) dismissing his defamation claim. Appellant argues that respondents are liable as publishers of SCSU's student-run newspaper for defamatory statements about appellant published in the student newspaper. Because there is no genuine issue of material fact that respondents' policy prohibited SCSU from exercising any control over the content of the student newspaper, the district court did not err by concluding that respondents are not liable for defamation and by granting summary judgment.

## FACTS

SCSU is a member of the MnSCU system and is governed by the MnSCU Board of Trustees. Minn.Stat. §§ 136F.02, 136F.06, 136F.10 (2004). The *University Chronicle* (the *Chronicle*) is the bi-weekly student-run newspaper at SCSU. Part five of MnSCU Board Policy 3.1, Student Rights & Responsibilities, relating to student publications, provides in relevant part

that "[s]tudent-funded publications shall be free of censorship and advance approval of copy, and their editors and managers shall be free to develop their own editorial and news coverage policies." The policy is binding on SCSU.

Appellant is a faculty member of SCSU who has filed an age-discrimination charge against SCSU for demoting him from his position as Dean of the College of Social Sciences in the fall of 2003. Shortly after appellant's demotion, the *Chronicle* published an article about appellant that included statements that, for purposes of summary judgment, are considered to be defamatory.

Appellant sued respondents asserting that, as publishers of the *Chronicle,* they are liable for the defamation. Respondents moved to dismiss under Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted.

Because the parties presented materials outside of the pleadings, the district court treated the motion as one for summary judgment and granted judgment to respondents. The district court concluded that because respondents have no editorial control over the *Chronicle,* they cannot be held liable for defamatory statements published in the *Chronicle.* This appeal followed.

## ISSUES

1. Did the district court err by concluding that respondents are not liable as publishers for defamatory statements published in the student-run newspaper because it is undisputed that respondents' policy prohibits SCSU from exercising any editorial control over the newspaper?

2. Did the district court abuse its discretion by not allowing appellant to conduct additional discovery prior to granting summary judgment?

3. Should respondent's motion to strike documents in appellant's supplemental appendix and statements in appellant's reply brief be granted?

## ANALYSIS

### I. Summary judgment on defamation claim

■ Two questions are considered on appeal from summary judgment: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Evidence must be viewed in the light most favorable to the nonmoving party, but "summary judgment cannot be defeated with unverified and conclusory allegations or by postulating evidence that might be developed at trial." *N. States Power Co. v. Minn. Metro. Council,* 684 N.W.2d 485, 491 (Minn.2004) (quotation omitted).

Whether a state university and its governing authority can be liable as publishers of defamatory material contained in a student-run newspaper is a question of first impression in Minnesota. The district court relied on the policy that prohibits SCSU from exercising editorial control over the *Chronicle* and adopted the reasoning in two cases from other jurisdictions that have addressed the issue: *Milliner v. Turner,* 436 So.2d 1300 (La.App. 1983), and *McEvaddy v. City Univ.,* 220 A.D.2d 319, 633 N.Y.S.2d 4 (N.Y.App.Div. 1995).

In *Milliner,* the trial court granted judgment to state-college faculty members on their defamation action against student-newspaper reporters, and the reporters were granted judgment on their third-party action against a state university for defamation per se published in the student newspaper. *Milliner,* 436 So.2d at 1301.

Liability of the university was premised on (1) a state statute making teachers answerable for damages caused by scholars under their superintendence when the teacher could have but failed to prevent the act that caused the damage and (2) the trial court's holding that the university had recklessly failed to provide adequate faculty guidance to the student paper as required in the Student Guide, which required each student organization to have two faculty representatives as advisors for all their activities. *Id.* at 1302.

The Louisiana Court of Appeals reversed judgment against the state university based on its conclusion that the First Amendment to the United States Constitution precludes a state institution, including a state university, from exercising "prior restraint on expression with regard to public areas ... because of its message, ideas, subject matter or its contents" and that the First Amendment preempts operation of the state law with regard to a university's right to and degree of control over its student publications. *Id.*

> The present situation is distinguishable from one in which a private newspaper, and its publisher, are involved in disseminating the news to the community or the public at large. The state may no more restrict the right of a private paper, or be held accountable for any libel it might publish, than can [state university] control or be responsible for possible libels published in its student paper.... The relationship between a university and its student newspaper is anomalous and cannot be compared with a publisher and its newspaper. The latter may exercise censorship to the fullest, as it deems commercially proper to do so, but the former is almost completely barred from censoring its student paper since that would be prior

restraint and would impede the free flow and expression of ideas.

*Id.* (citations omitted).

The Louisiana Court of Appeals relied in part on *Joyner v. Whiting*, 477 F.2d 456 (4th Cir.1973), for the proposition that the First Amendment to the United States Constitution precludes a state university's control over the content of a student newspaper. *Milliner*, 436 So.2d at 1302. *Joyner* involved an appeal by the editor-in-chief of the official student newspaper of a university from a district court order denying his suit to reinstate university financial support of the newspaper and permanently enjoining future financial support for the campus newspaper, which had been denied support because the university disagreed with the newspaper's editorial policy. The Fourth Circuit Court of Appeals reversed the district court, stating:

> Fortunately, we travel through well[-]charted waters to determine whether the permanent denial of financial support to the newspaper because of its editorial policy abridged the freedom of the press. The First Amendment is fully applicable to the states, ... and precedent establishes "that state colleges and universities are not enclaves immune from [its] sweep." A college, acting "as the instrumentality of the State, may not restrict speech ... simply because it finds the view expressed by any group to be abhorrent." *Healy v. James*, 408 U.S. 169, 180, 187, 92 S.Ct. 2338, 2345, 2349, 33 L.Ed.2d 266 (1972)....

*Id.* at 460 (citations omitted). The *Joyner* court noted that "the principles reaffirmed in *Healy* have been extensively applied to strike down *every form* of censorship of student publications at state-supported institutions." *Id.* (emphasis added).

*McEvaddy v. City Univ. of New York* is a memorandum decision of an appellate

division of the New York Supreme Court affirming summary dismissal of a defamation action against City University of New York based on an allegedly libelous article published in the student newspaper. 633 N.Y.S.2d at 4. The brief opinion is based on previous New York cases analyzing whether a student newspaper is an "agent" of the state institution for purposes of liability for defamation. *Id.* (citing *Mazart v. State of New York*, 109 Misc.2d 1092, 441 N.Y.S.2d 600 (N.Y.Ct.Cl.1981), which held that vicarious liability in a defamation case brought against the state fails where the state, as alleged principal, has no right of control over the alleged agent). *Mazart* based lack of control of a state college over a student newspaper on First Amendment restrictions on a state university's ability to censor such newspapers. *Mazart*, 441 N.Y.S.2d at 605–06. *McEvaddy* held that the presence of a faculty advisor to the paper, whose advice was not binding, and the financing of the paper through student activity fees dispensed by the university "do not demonstrate such editorial control or influence over the paper by [City University] as to suggest an agency relationship." *McEvaddy*, 633 N.Y.S.2d at 4.

Appellant points out that the cases relied on by the district court are lower-level court opinions from foreign jurisdictions that do not reflect any broad or widespread pattern. We disagree with this assertion; the cases relied on by the district court simply follow the firmly established policy of giving students on college campus as many first amendment rights protections as the community at large. *See Healy*, 408 U.S. at 180–81, 92 S.Ct. at 2345–46, *citing Shelton v. Tucker*, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960) ("the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools").

Appellant insists that the issue in this case has nothing to do with whether respondents can or should censor the student newspaper, but is solely a matter of "who is legally responsible, as the publisher, for the libel?" We conclude that the district court properly rejected this strict-liability argument and correctly focused on the issue of whether there was any evidence that respondents controlled or could have controlled the content of the publication:

"At common law, the general rule was that everyone involved with the publication of a defamatory statement or in procuring it to be published was equally responsible with the author." M. David LeBrun, Annotation, *Liability of Commercial Printers for Defamatory Statements Contained in Printed Matter Printed for Another*, 16 A.L.R.4th 1372, 1373 (1982). In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court, balancing the tension between the First Amendment to the United States Constitution and a state's interest in assuring compensation for wrongful harm to one's reputation, established a level of constitutional protection for publishers of defamation of a public person. *See id.*, 376 U.S. at 279–80, 84 S.Ct. at 726. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the United States Supreme Court held that "*so long as they do not impose liability without fault*, the states may define for themselves the appropriate standard of liability for a publisher of defamatory falsehood injurious to a private individual." *Id.* at 347, 94 S.Ct. at 3010 (emphasis added).

■ In Minnesota, the basis for holding the publisher of a newspaper vicariously liable for defamation in the newspaper is the relationship of principal and agent between the publisher and the newspaper.

*See Friedell v. Blakely Printing Co.,* 163 Minn. 226, 203 N.W. 974 (1925) (applying principal/agent reasoning to determine liability of a newspaper publisher for alleged libel about a candidate for public office that appeared in one of publisher's newspapers). *Friedell* focused on the publisher's power to select his own employees and on whether the employees acted within the scope of their employment. *Id.* at 234, 203 N.W. at 977. *Friedell* explicitly notes the publisher's right to discharge employees and to control the content of the publication through control over its employees. *Id.*

■ As the district court in the case before us correctly noted, however, respondents' relationship with the *Chronicle* is, by virtue of MnSCU's policy and First Amendment constraints, significantly different from a private publisher's relationship with its newspapers. Respondents, unlike a private publisher, have no control over the content of the *Chronicle.* Despite the "plethora of connections" between *The Chronicle* and SCSU asserted by appellant and accepted by the district court for purposes of summary judgment,[1] it cannot be disputed that respondents' policy prohibits SCSU from exercising any control over the content of the *Chronicle.*

Appellant argues that the district court erred by failing to make an "informed and reasoned decision as to the responsibility"

of respondents for the defamatory publication. Appellant relies on *Sinn v. The Daily Nebraskan,* 829 F.2d 662 (8th Cir.1987) which considered whether the act of a student newspaper constituted state action. *Sinn* did not involve a claim of defamation, but rather was an action against the newspaper itself, asserting that the newspaper's refusal to print plaintiff-roommate-advertisers' ads that indicated a gay or lesbian orientation violated the advertiser's First Amendment rights. *Id.* at 663. The Eighth Circuit affirmed the district court's conclusion that "[a]s a result of [a] careful study of the many safeguards preventing the state from interfering with the [student newspaper] … the action of the newspaper was not 'fairly attributable' to the state."[2] *Id.* at 665. In reaching its conclusion, the Eighth Circuit rejected a per se rule either imposing or prohibiting attribution of a student newspaper's act to a state university, in favor of a case-by-case approach. *Id.* at 666.

Appellant asserts that in this case the district court erred by adopting a per se rule. Whether a per se rule is or is not appropriate in this case, we disagree with appellant's claim that the district court adopted a per se rule. The district court, contrary to appellant's assertions, made an informed and reasoned decision based on the specific facts of this case asserted by

1. For purposes of summary judgment, it is undisputed that SCSU plays a role in selection of the *Chronicle's* editor, business manager, and faculty advisor; provides start-up operating funds at the beginning of each year; requires the *Chronicle* to undergo a certification process each year; allows the use of SCSU's trademarked logo; provides equipment, services, and facilities free of charge; provides a full-time faculty advisor employed by SCSU whose role is to represent and protect the interests of SCSU; requires the *Chronicle* to have a constitution and bylaws, which state that it exists for the benefit of, and concerning, the students, faculty, staff,

administration, and St. Cloud community; and requires the *Chronicle* to submit an annual recognition form listing officers and pledging its compliance with all SCSU policies and procedures in the code of conduct and student-organization manual.

2. Appellant's complaint and argument is based on his argument that SCSU and MnSCU are publishers of the *Chronicle.* The district court in this case was not called upon to make the state-action analysis required in *Sinn.*

appellant and the undisputed MnSCU policy. We conclude that the district court's approach in this case is consistent with the approach in *Sinn* of determining each case on its underlying facts.

Appellant argues that to absolve respondents of liability for defamation based on MnSCU's policy is to carve out a "liability-free zone" that is contrary to public policy because it would deprive appellant of a remedy for the harm done to him. Appellant conceded that he might have a remedy against the author of the article or the editor of the *Chronicle*, but asserts that such a remedy is inadequate. We are not unsympathetic to this argument and recognize that our holding disadvantages some worthy plaintiffs, but we reject the assertion that this result is necessarily bad public policy. Justice Powell, writing in *Gertz* about a similar problem created for plaintiffs by the United States Supreme Court's holding in *New York Times v. Sullivan*,[3] stated:

> Plainly many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier of the *New York Times* test. Despite this substantial abridgment of the state law right to compensation for wrongful hurt to one's reputation, the Court has concluded that the protection of the *New York Times* privilege should be available to publishers and broadcasters.... [W]e believe that the *New York Times* rule states an accommodation between [the interests of the press] and the limited state interest present in the context of a libel action brought by public persons.

*Gertz*, 418 U.S. at 342–43, 94 S.Ct. at 3008 (citation omitted). Holding that respondents are not liable for defamation as publishers of the student-run newspaper in this case is a similar accommodation between appellant's claim for compensation for harm and the First Amendment and policy restrictions placed on respondents.

## II. Denial of motion to continue to conduct discovery

▮▮▮ Appellant also argues that summary judgment is premature and that the district court should have granted a continuance to allow further discovery. Minnesota Rule of Civil Procedure 56.06 provides:

> Should it appear from the affidavits of a party opposing [a summary judgment motion] that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A district court's decision to deny a motion for a continuance to conduct discovery is reviewed under an abuse-of-discretion standard. *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 346 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998). Such continuances should be liberally granted, especially when the continuance is sought because of a claim of insufficient time to conduct discovery. *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn. 1982).

▮▮▮ Given the presumption in favor of such continuances, a reviewing court focuses on two questions: (1) has plaintiff been diligent in seeking or obtaining discovery and (2) is plaintiff seeking further discovery in the good-faith belief that material facts will be uncovered, or is plaintiff merely engaging in a "fishing expedition?" *Id.* "[T]he court should be quite strict in

3. 376 U.S. at 283, 84 S.Ct. at 727.

refusing continuances where the party merely expresses a hope or a desire to engage in a fishing expedition...." *Id.* (quotation omitted).

■ Respondents moved for dismissal on March 30, 2004, noticing a hearing date of June 4, 2004. On May 20, 2004, appellant submitted the affidavit of one of his attorneys asserting that more time was needed to complete discovery because the deposition of the editor of the *Chronicle,* which had been scheduled for May 11, 2004, was postponed at the last minute at the request of counsel for the *Chronicle* and could not be rescheduled before the due date for appellant's response to respondents' motion. The affidavit states that the deposition and "perhaps other discovery as well, is necessary to fully develop the relationship between" the *Chronicle* and respondents.

In his memorandum opposing respondents' motion to dismiss, appellant also argued that further discovery was needed to explore the relationship between SCSU and the *Chronicle,* and what role SCSU played in the defamatory article. Appellant asserted that fact issues remained about that relationship, about how and why the allegedly libelous article was published, the participation and role of SCSU personnel in publication, "and a number of other matters."

The transcript of the hearing reveals only two references to the need for additional discovery. Appellant's counsel stated that additional discovery might result in the addition of defendants, and, after reciting all of the known connections between the *Chronicle* and SCSU, argued that dismissal under Rule 12 would be inappropriate, although summary judgment might be appropriate after further discovery. The district court did not explicitly address the issue, but implicitly rejected appellant's request for further discovery by granting summary judgment.

Respondents argue that because the district court, for purposes of summary judgment, accepted as true all of the connections asserted by appellant between SCSU and the *Chronicle,* further discovery would not change the outcome in this case. We agree.

Appellant's complaint is premised solely on respondents' alleged role as publishers of the *Chronicle.* But an undisputed MnSCU board policy, which is binding on SCSU, prevents SCSU from using any connections with the *Chronicle* to control the content of the *Chronicle.* And, as noted by the district court, the policy "is simply a recognition and expression of the limits imposed on [respondents] by the First Amendment." Additional connections between SCSU and the *Chronicle* that might be developed through further discovery would not alter the effect of the policy. We conclude that for purposes of determining respondents' liability as publishers of the *Chronicle,* failure to continue the case for further discovery was not an abuse of the district court's discretion. *See McCormick v. Custom Pools, Inc.,* 376 N.W.2d 471, 477 (Minn.App.1985) (holding that where additional discovery sought in a products-liability case addressed product's defects and for purposes of summary judgment district court assumed all defects alleged, additional discovery would not have aided district court in causation determination), *review denied* (Minn. Dec. 30, 1985).

To the extent appellant speculates that discovery might have turned up evidence of SCSU's liability for the defamation on some theory other than liability as publisher, appellant was on a "fishing expedition," and the district court did not abuse its discretion by denying a continuance based

on appellant's mere speculation that such evidence may exist.

### III. Respondents' motion to strike

 Respondents moved to strike the appellant's supplemental appendix and portions of the reply brief referring to that appendix as not properly before this court. Appellant did not respond to the motion in writing. But at oral argument, appellant's counsel asserted that this court could consider the materials, which include attorney correspondence, *Chronicle* articles, and a copy of age-discrimination charges filed by appellant with the Equal Employment Opportunity Commission and the Minnesota Department of Human Rights against SCSU, because they are in the public record.

The record on appeal consists of the papers filed in the district court, the exhibits, and the transcript of proceedings. Minn. R. Civ.App. P. 110.01. It is undisputed that the documents to which respondents object were not filed in the district court and were not before that court when it considered the motion for summary judgment. Generally, this court will strike references to matters outside the record. *Fabio v. Bellomo,* 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd,* 504 N.W.2d 758 (Minn.1993). At the district court, appellant briefly mentioned the EEOC charge and a potential connection between that legal dispute and the article at issue in this case. But appellant did not submit documentary support for those statements to the district court, and appellant does not even cite to several of these documents in the reply brief. We will not consider these documents for the first time on appeal. Respondents' motion to strike is granted.

### DECISION

Because MnSCU's policy, which is binding on SCSU, prohibits SCSU from exercising any editorial control over the contents of SCSU's student-run newspaper, the district court did not err by granting summary judgment to MnSCU and SCSU on appellant's claim that MnSCU and SCSU are liable for defamation published in the newspaper.

**Affirmed; motion granted.**